1

2   **Daniel Jackson Rice, OSB No. 084536**                FILED '09 SEP 15 10:50 USDC-ORE
    drice@heltzel.com
3    Heltzel, Williams, Yandell,
    Roth, Smith & Petersen, PC
4   117 Commercial Street NE
    PO Box 1048
5   Salem, OR 97308-1048
    Tele: (503) 585-4422
6   Fax: (503) 370-4302
    Attorneys for Defendant FDIC

7

8                    UNITED STATES DISTRICT COURT

9                       FOR THE DISTRICT OF OREGON

10  R.E. NOAH AND CO., an Oregon          )    Case No. C9-6259-HO
    corporation,                          )
11                                        )
                    Plaintiff,            )    NOTICE OF REMOVAL
12                                        )
            v.                            )
13                                        )
    BBGL INVESTMENTS, LLC, an             )
14  Oregon limited liability company;     )
    SILVER FALLS BANK, an Oregon          )
15  banking institution; FEDERAL          )
    DEPOSIT INSURANCE                     )
16  CORPORATION; and                      )
    CHRISTOPHER LITTLETON, an             )
17  individual,                           )
                                          )
18                  Defendants.           )
                                          )
19

20      TO THE CLERK OF COURT:

21      PLEASE TAKE NOTICE that, pursuant to 12 USC § 1819 and 28 USC §§ 1441

22  and 1446, defendant Federal Deposit Insurance Corporation hereby removes to this Court

1 - NOTICE OF REMOVAL
W:\clients\FD14104\011\00040937.WPD

602004647

1    the case now pending in Douglas County Circuit Court as R.E. Noah and Co. v. BBGL

2    Investments, LLC, *et al.*, Case No. 09CV-2641CC.

3          As grounds for removal, FDIC states as follows:

4        1)    On June 24, 2009, Plaintiff R.E. Noah and Co. filed its complaint in

5    Douglas County Circuit Court Case No. 09CV-2641CC. Pursuant to 28 USC § 1446(a),

6    FDIC is including with this Notice of Removal all state court documents delivered to

7    FDIC at the time of removal, consisting of the summons and complaint, and the Notice of

8    Intent to Take Default Against Defendants BBGL Investments LLC and Christopher

9    Littleton. The state court documents are attached as Exhibit 1.

10

11        2)    This Notice of Removal is timely filed under 12 USC § 1819(B), which

12    allows the FDIC to remove any case in which it is a party within 90 days from the date the

13    action is filed against the FDIC or it is substituted as a party. Less than 90 days have

14    expired since June 24, 2009.

15        3)    Under 12 USC § 1819(b)(2)(A), all actions involving the FDIC as a party,

16    in any capacity, are deemed to arise under the laws of the United States. The only

17    exception is found at 12 USC § 1819(b)(2)(D), which applies when, among other things,

18    the FDIC is acting as receiver for a state-insured depository institution. In this case, the

19    FDIC is not acting as receiver for a state-insured depository institution. This case arises

20    under the laws of the United States, and the FDIC has the right to remove.

21        3)    Consent of the co-defendants is not required, as 12 USC 1819(b)(2)(B) allows

22    the FDIC to remove without all defendants joining. See, e.g., *In re Franklin National*

2 - NOTICE OF REMOVAL
W:\clients\FD14104\011\00040937.WPD

1  *Bank Securities Litigation*, 532 F.2d 842, 846 (2nd Cir. 1976); *FDIC v. Crowe*, 652 F.

2  Supp. 740, 742 (N.D. Texas 1984).

3      4)    Pursuant to 28 USC § 1441(a), removal to this Court is proper as it is the

4  district and division embracing where the state court action is currently pending.

5      5)    FDIC is providing written notice of the filing of this Notice of Removal to

6  all adverse parties in this action. Furthermore, FDIC is filing a copy of the Notice with the

7  Clerk of the Circuit Court of Douglas County. See 28 USC § 1446(d).

8      Dated: September 15th, 2009.

9

10      HELTZEL, WILLIAMS, YANDELL,
    ROTH, SMITH & PETERSEN, P.C

11

12      By: *Daniel Rice*

13      Daniel Jackson Rice, OSB No. 084536
    Of Attorneys for Defendant Federal Deposit
    Insurance Corporation

14

15

16

17

18

19

20

21

22

3 - NOTICE OF REMOVAL
W:\clients\FD14104\011\00040937.WPD

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF DOUGLAS



| | |
|---|---|
| R. E. NOAH AND CO., an Oregon corporation, | Case No. 09CV2641CC |
| Plaintiff, | SUMMONS |
| v. | |
| BBGL INVESTMENTS LLC, an Oregon limited liability company; SILVER FALLS BANK, an Oregon banking institution; FEDERAL DEPOSIT INSURANCE CORPORATION; and CHRISTOPHER LITTLETON, an individual, | |
| Defendants. | |

TO:   Silver Falls Bank, c/o FDIC, Receiver, Jim McCormick, Silver Falls Bank, 210 Oak St, Silverton OR 97381-1671

IN THE NAME OF THE STATE OF OREGON:  You are required to appear and to defend against the Complaint filed against you in this case within thirty (30) days from the date of service of this Summons upon you.  If you fail to appear and to defend, plaintiff will apply to the Court for the relief demanded in the Complaint.

## NOTICE TO DEFENDANT:
## READ THESE PAPERS CAREFULLY!

You must "appear" in this case or the other side will win automatically.  To "appear" you must file with the Court a legal paper called a "motion" or "answer."  The "motion" or "answer" must be given to the Court Clerk or Administrator within thirty (30) days along with the required filing fee.  It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.

If you have questions, you should see an attorney immediately.  If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.


                    /s/ John J. Hickey
                    John J. Hickey, 063593
                    Of Attorneys for Plaintiff

I certify that I have prepared this copy of Summons and that I have carefully compared this copy with the original.  I further certify that this is a true, exact, complete and correct copy of the original.  The post office address at which papers in this action may be served upon plaintiff by mail is: c/o Jordan Schrader Ramis PC, Two Centerpointe Dr, 6th Flr, Lake Oswego, OR 97035, (503) 598-7070.

DATED this 10th day of July, 2009.


                    John J. Hickey, 063593
                    Of Attorneys for Plaintiff


SUMMONS

Exhibit _1_
Page _1_

COPY

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF DOUGLAS

| | |
|---|---|
| R. E. NOAH AND CO., an Oregon corporation, | Case No. 09CV2641CC |
| Plaintiff, | COMPLAINT |
| v. | (Foreclosure Of Construction Lien; Breach Of Contract; Quantum Meruit; Action on Personal Guarantee) |
| BBGL INVESTMENTS LLC, an Oregon limited liability company; SILVER FALLS BANK, an Oregon bank; FEDERAL DEPOSIT INSURANCE CORPORATION; and CHRISTOPHER LITTLETON, an individual, | NOT SUBJECT TO MANDATORY ARBITRATION |
| Defendants. | |

COMES NOW plaintiff R. E. Noah and Co. ("plaintiff"), and states as follows:

## FIRST CLAIM FOR RELIEF

### (Lien Foreclosure)

1.

At all material times, plaintiff was and is an Oregon corporation, duly formed and authorized to conduct business in the state of Oregon and licensed as a construction contractor with the Oregon Construction Contractors Board.

2.

At all material times, defendant BBGL Investments LLC ("defendant BBGL"), was and is an Oregon limited liability company.

3.

At all material times, defendant BBGL was and is the owner of the real property hereinafter described.

Page 1 – COMPLAINT

JORDAN SCHRADER RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone: (503) 598-7070 Fax: (503) 598-7373
47005-38214 168742.doc\CEH\6/08/2009

Exhibit 1
Page 2

4.

2         Defendant Silver Falls Bank ("Silver Falls") was, at all material times, an Oregon bank, which, upon information and belief, has now been closed by the Oregon Department of Consumer and Business Services.

5.

6         Defendant Federal Deposit Insurance Company ("FDIC") is an agency of the U.S. government and has been appointed as receiver of Silver Falls Bank.

6.

9         At all material times, defendants Silver Falls and FDIC were and are entities claiming an interest in the property hereinafter described. The priority of plaintiffs and defendants Silver Falls' and FDIC's interest in the Property hereinafter described will be determined by the Court pursuant to ORS Chapter 87.

7.

14         On or about January 3, 2008, plaintiff and defendant BBGL entered into a contract ("Contract") for construction of improvements (the "Project") at real property located at 7845 Old Hwy 99 North, Roseburg, Douglas County, Oregon, legally described as: Parcel 1, land partition 2003-21, surveyor's records of Douglas County, Oregon, recorders instrument No. 2003-7907 ("the Property"). A copy of the Contract is attached hereto as Exhibit 1, and by this reference, incorporated herein.

8.

21         Plaintiff, in conformance with the Contract and at the request of, and with defendant BBGL's knowledge, provided labor, equipment, and materials for the Project, all to the benefit of the Project and the Property.

/////

/////

Page 2 – COMPLAINT

JORDAN SCHRADER RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6ᵗʰ Flr
Lake Oswego OR 97035
Telephone: (503) 598-7070 Fax: (503) 598-7373
47005-38214 168742.doc\CEI/6/23/2009

Exhibit 1
Page 3

1

9.

2     The Contract and reasonable value of the labor, materials, equipment, including overhead

3 and profit remaining due according to the terms of the Contract is $95,145.00. Defendant BBGL

4 has failed and refused to pay the $95,145 remaining owed plaintiff.

5

10.

6     On February 24, 2009, within seventy-five (75) days after plaintiff completed work on the

7 Project, plaintiff filed a Claim of Lien, under Douglas County Recorder's No. 2009-004091 of the

8 Official Records of Douglas County, Oregon, claiming a right to payment of the unpaid contract

9 balance due of $95,145.00. A copy of the Claim of Lien is attached hereto as Exhibit 2, and is

10 incorporated herein by this reference. The Claim of Lien was amended by a Supplemental Claim of

11 Lien recorded on February 25, 2009, under Douglas County Recorder's No. 2009-004131. A copy

12 of the Supplemental Claim of Lien is attached hereto as Exhibit 3, and by this reference,

13 incorporated herein.

14

11.

15     Within twenty (20) days of the date the Claim of Lien was filed and more than ten

16 (10) days prior to the filing of this Complaint, plaintiff gave notice to defendants as provided at

17 ORS 87.039 and ORS 87.057.

18

12.

19     All conditions to payment of this amount have occurred, have been performed, or are excused.

20

13.

21     Plaintiff is entitled to prejudgment interest at the applicable statutory rate per month on

22 the unpaid amount due and owing of $95,145 from the date(s) said sum became due, until paid.

23 /////

24 /////

25 /////

Page 3 – COMPLAINT

JORDAN SCHRADER RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone: (503) 598-7070 Fax: (503) 598-7373
47005-38214 168742.doc\CEJ/6/23/2009

Exhibit 1
Page 4

1                           14.

2       Plaintiff is entitled to recover $26 paid to the county clerk of Douglas County, Oregon,

3 for filing and recording its Claim of Lien pursuant to ORS 87.060(5). Plaintiff is also entitled to

4 recover $438 for purchase of a lien foreclosure guarantee.

5                           15.

6       Plaintiff has incurred is entitled to recover its reasonable attorney fees for the foreclosure

7 of its lien pursuant to ORS 87.060(5).

8                           16.

9       Plaintiff has no plain, speedy, or adequate remedy at law. It will be necessary to sell the

10 Property to satisfy the claim.

11                   **SECOND CLAIM FOR RELIEF**

12            **(Breach of Contract - Defendant BBGL)**

13       For plaintiff's Second Claim for Relief against defendant BBGL only, plaintiff alleges:

14                           17.

15     Plaintiff restates the allegations at paragraphs 1, 2, 7, 8, 9, and 12 above.

16                           18.

17       Defendant BBGL is in material breach of the contract based upon its refusal to pay

18 amounts owed plaintiff.

19                           19.

20       Plaintiff is entitled to a judgment against defendant BBGL in the amount of $95,145,

21 together with prejudgment interest at the applicable contract rate of 12% per annum,

22 compounded monthly, from the date said sum(s) became due until paid.

23                           20.

24       Plaintiff is entitled to recover its prevailing party attorney fees pursuant to

25 Paragraph 10.3.4 of the General Conditions to the Contract.

Page 4 – COMPLAINT

JORDAN SCHRADER RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6ᵗʰ Flr
Lake Oswego OR 97035
Telephone: (503) 598-7070 Fax: (503) 598-7373
47005-38214 168742.doc\CEJ/6/23/2009

Exhibit _1_
Page _5_

1    ## THIRD CLAIM FOR RELIEF

2    ### (Quantum Meruit – Defendant BBGL)

3    For plaintiff's alternative Third Claim for Relief against defendant BBGL only, plaintiff

4    alleges:

5                                    21.

6    Plaintiff restates the allegations at paragraphs 1, 2, 8, 9, and 12.

7                                    22.

8    The amount, type, and quantity of the labor, materials, and equipment provided and

9    amounts charged by plaintiff for the work were reasonable, and defendant BBGL is enriched

10    thereby.

11                                    23.

12    Plaintiff is entitled to recover its prejudgment interest on the amounts owed at the

13    statutory rate of 9% per annum.

14    ## FOURTH CLAIM FOR RELIEF

15    ### (Personal Gurantee – Christopher Littleton)

16                                    24.

17    Plaintiff restates the allegations at paragraphs 1, 2, 3, 7, 8, 9, and 12.

18                                    25.

19    Paragraph 11.1.1 of the Contract says that "[a]ll members of BBGL Investments LLC are

20    individually liable for all obligations of BBGL Investments LLC."

21                                    26.

22    Upon information and belief, Christopher Littleton is a member of defendant BBGL.

23                                    27.

24    Christopher Littleton signed the Contract in a representative capacity and in an individual

25    capacity.

Page 5 – COMPLAINT

JORDAN SCHRADER RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6ᵗʰ Flr
Lake Oswego OR 97035
Telephone: (503) 598-7070 Fax: (503) 598-7373
47005-38214 168742.doc\CEJ\6/23/2009

Exhibit 1
Page 6

1                                                     28.

2          To the extent the amount remaining due and owing is not paid by BBGL Investments

3    LLC, Christopher Littleton is liable therefore.

4          WHEREFORE, plaintiff prays for judgment in favor of plaintiff as follows:

5          **On Plaintiff's First Claim for Relief:**

6          For Judgment of Foreclosure against all defendants, allowing as follows:

7          1.      $95,145 principal;

8          2.      Accrued interest at the statutory rate on the principal amount from the date(s) said

9                  sum became due, until paid;

10         3.      $26 for recording the Claim of Lien;

11         4.      $428 for the foreclosure guarantee;

12         5.      Costs and disbursements incurred by plaintiff in an amount to be proved at trial;

13         6.      Reasonable attorney fees of plaintiff;

14         7.      Decree declaring that the lien of plaintiff's Claim of Lien constitutes a valid and

15   subsisting lien against defendants' interests in the Property and the Project, and declaring that the

16   lien is superior, senior and prior to the extent provided in ORS Chapter 87 to any interest, lien, or

17   claim of any defendant;

18         8.      Decree foreclosing the Claim of Lien of plaintiff and ordering sale of the Property

19   and Project by the Sheriff of Douglas County in the manner prescribed by law as on execution to

20   satisfy the judgment prayed for above in this prayer;

21         9.      Decree that proceeds of Sheriff's Sale be applied first to costs and expenses of

22   sale, second towards satisfaction of the judgment prayed for above in this prayer, and finally to

23   the Clerk of the Court subject to further order of the Court.

24   /////

25   /////

Page 6 – COMPLAINT

JORDAN SCHRADER RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6ᵗʰ Flr
Lake Oswego OR 97035
Telephone: (503) 598-7070 Fax: (503) 598-7373
47005-38214 168742.doc\CEJ/6/23/2009

Exhibit   1
Page   7

1      10.    To the extent provided in ORS Chapter 87, Decree that defendants, and each of

2   them, and each person claiming by, through or under defendants, either as purchaser,

3   encumbrancer or otherwise, are foreclosed of all right, title, interest, or lien in the Property;

4      11.    Decree that plaintiff or any other party to this suit may become purchaser at the

5   sale of the Property and Project and that to the extent it is determined to have a priority interest

6   in the Property, the purchaser is entitled to exclusive possession of the Property and Project from

7   the date of sale and is entitled to remedies that are available at law to secure such possession,

8   including writ of assistance, if defendants or any other person refuses immediately to surrender

9   possession to the purchaser;

10      12.    Against defendant BBGL and defendant Christopher Littleton for deficiency to be

11   enforced by execution as provide by law if proceeds of the sale are insufficient to satisfy the

12   judgment prayed in this prayer; and

13      13.    Other just and equitable relief.

14   **On Plaintiff's Second Claim for Relief:**

15   For judgment against defendant BBGL, as follows:

16   1.    $95,145 principal;

17   2.    Accrued interest at the Contract rate of 12% per annum, compounded monthly, on

18          the principal amount from the date(s) said sum became due, until paid;

19   3.    Costs, disbursements, and reasonable attorney fees incurred by plaintiff; and

20   4.    Other just and equitable relief.

21   **On Plaintiff's Third Claim for Relief:**

22   For Judgment against defendant BBGL, as follows:

23   1.    $95,145 principal;

24   2.    Accrued interest at 9% per annum on the principal amount from the date(s) said

25          sum became due, until paid;

Page 7 – COMPLAINT

JORDAN SCHRADER RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone: (503) 598-7070 Fax: (503) 598-7373
47005-38214 168742.doc\CEJ/6/23/2009

Exhibit 1
Page 8

1       3.      Costs and disbursements incurred by plaintiff; and

2       4.      Other just and equitable relief.

3    **On Plaintiff's Fourth Claim for Relief:**

4    For Judgment against Christopher Littleton, as follows:

5       1.      In an amount to be determined to be owed plaintiff under the Guarantee and

6    related costs and expenses as alleged herein, including attorney fees; and

7       2.      Other just and equitable relief.

8    Dated this _23_ day of June, 2009.

9                                   JORDAN SCHRADER RAMIS PC
                                    Attorneys for Plaintiff R. E. Noah and Co. v.
10

11

12                                  By: _____
                                        John J. Hickey, OSB # 063593
13                                      john.hickey@jordanschrader.com
                                        Fax No. (503) 598-7373

14    Trial Attorney:  John J. Hickey, OSB # 063593

15

16

17

18

19

20

21

22

23

24

25

Page 8 – COMPLAINT

JORDAN SCHRADER RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone: (503) 598-7070 Fax: (503) 598-7373
47005-38214 168742.doc\CEJ/6/23/2009

Exhibit _1_
Page _9_



**DESIGN-BUILD**
**INSTITUTE OF AMERICA**

# Standard Form of Agreement Between Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price

*This document has important legal consequences. Consultation with an attorney is recommended with respect to its completion or modification.*

This **AGREEMENT** is made as of the ___Third___ day of ___January___ in the year of ___2008___, by and between the following parties, for services in connection with the Project identified below:

**OWNER:**
*(Name and address)*

BBGL Investments, LLC
2200 Siskiyou Blvd.
Medford, OR   97504

**DESIGN-BUILDER:**
*(Name and address)*

R. E. Noah and Company
241 NE Ivan Street
Roseburg, OR   97470

**PROJECT:**
*(Include Project name and location as it will appear in the Contract Documents)*

BBGL Mini Storage
7845 Old Hwy 99 North
Roseburg, OR   97470

In consideration of the mutual covenants and obligations contained herein, Owner and Design-Builder agree as set forth herein.

DBIA Document No. 530 • Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

EXHIBIT
PAGE   Page 1   OF

Exhibit
Page 10

# Article 1

## Scope of Work

1.1     Design-Builder shall perform all design and construction services, and provide all material, equipment, tools and labor, necessary to complete the Work described in and reasonably inferable from the Contract Documents.


# Article 2

## Contract Documents

2.1     The Contract Documents are comprised of the following:

   .1     All written modifications, amendments (including, as applicable, the GMP Exhibit referenced in Section 6.5.1.1 hereof or the GMP Proposal accepted by Owner in accordance with Section 6.5.2 hereof) and change orders to this Agreement issued in accordance with DBIA Document No. 535, *Standard Form of General Conditions of Contract Between Owner and Design-Builder* (1998 Edition) ("General Conditions of Contract");

   .2     This Agreement, including all exhibits (but excluding, if applicable, the GMP Exhibit) and attachments;

   .3     Written Supplementary Conditions, if any, to the General Conditions of Contract;

   .4     The General Conditions of Contract;

   .5     Construction Documents prepared and approved in accordance with Section 2.4 of the General Conditions of Contract;

   .6     Owner's Project Criteria; and

   .7     The following other documents, if any: *(List, for example, Unit Price Schedules, Design-Builder's allowances, Performance Standard Requirements, Owner's Permit List and any other document Owner and Design-Builder elect to make a Contract Document)*

   1.     As per proposal dated 12/27/07, by R. E. Noah and Company.

EXHIBIT 1
PAGE 2 OF 35

DBIA Document No. 530 • Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America



Exhibit 1
Page 11

## Article 3

## Interpretation and Intent

**3.1**    The Contract Documents are intended to permit the parties to complete the Work and all obligations required by the Contract Documents within the Contract Time(s) for the Contract Price. The Contract Documents are intended to be complementary and interpreted in harmony so as to avoid conflict, with words and phrases interpreted in a manner consistent with construction and design industry standards. In the event of any inconsistency, conflict, or ambiguity between or among the Contract Documents, the Contract Documents shall take precedence in the order in which they are listed in Section 2.1 hereof.

**3.2**    Terms, words and phrases used in the Contract Documents, including this Agreement, shall have the meanings given them in the General Conditions of Contract.

**3.3**    The Contract Documents form the entire agreement between Owner and Design-Builder and by incorporation herein are as fully binding on the parties as if repeated herein. No oral representations or other agreements have been made by the parties except as specifically stated in the Contract Documents.

## Article 4

## Ownership of Work Product

**4.1**    **Work Product.** All drawings, specifications and other documents and electronic data furnished by Design-Builder to Owner under this Agreement ("Work Product") are deemed to be instruments of service and Design-Builder shall retain the ownership and property interests therein, including the copyrights thereto.

**4.2**    **Owner's Limited License Upon Payment in Full.** Upon Owner's payment in full for all Work performed under the Contract Documents, Design-Builder shall grant Owner a limited license to use the Work Product in connection with Owner's occupancy of the Project, conditioned on Owner's express understanding that its use of the Work Product is at Owner's sole risk and without liability or legal exposure to Design-Builder or anyone working by or through Design-Builder, including Design Consultants of any tier (collectively the "Indemnified Parties").

**4.3**    **Owner's Limited License Upon Owner's Termination for Convenience or Design-Builder's Election to Terminate.** If Owner terminates the Project for its convenience as set forth in Article 8 hereof, or if Design-Builder elects to terminate this Agreement in accordance with Section 11.4 of the General Conditions of Contract, Design-Builder shall, upon Owner's payment in full of the amounts due Design-Builder under the Contract Documents, grant Owner a limited license to use the Work Product to complete the Project and subsequently occupy the Project, conditioned on the following:

.1    Use of the Work Product is at Owner's sole risk without liability or legal exposure to any Indemnified Party; and

.2    Owner agrees to pay Design-Builder the additional sum of _____ Dollars ($ _____) as compensation for the right to use the Work Product in accordance with this Article 4 if Owner resumes the Project through its employees, agents, or third parties.

**4.4**    **Owner's Limited License Upon Design-Builder's Default.** If this Agreement is terminated due to Design-Builder's default pursuant to Section 11.2 of the General Conditions of Contract and (i) it is determined that Design-Builder was in default and (ii) Owner has fully satisfied all of its obligations under the Contract Documents, Design-Builder shall grant Owner a limited license to use the Work Product in connection with

DBIA Document No. 530 • Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

EXHIBIT 3
PAGE 5 OF 5

Exhibit 1
Page 12

Owner's completion and occupancy of the Project. This limited license is conditioned on Owner's express understanding that its use of the Work Product is at Owner's sole risk and without liability or legal exposure to any Indemnified Party.

**4.5     Owner's Indemnification for Use of Work Product.** If Owner uses the Work Product under any of the circumstances identified in this Article 4, Owner shall defend, indemnify and hold harmless the Indemnified Parties from and against any and all claims, damages, liabilities, losses and expenses, including attorneys' fees, arising out of or resulting from the use of the Work Product.

## Article 5

## Contract Time

**5.1     Date of Commencement.** The Work shall commence within five (5) days of Design-Builder's receipt of Owner's Notice to Proceed ("Date of Commencement") unless the parties mutually agree otherwise in writing. DEQ permit and building permit to precede, written notice to proceed.

**5.2     Substantial Completion and Final Completion**

**5.2.1**    Substantial Completion of the entire Work shall be achieved no later than <u>Three Hundred Sixty</u> Five ( <u>365</u> ) calendar days after the Date of Commencement ("Scheduled Substantial Completion Date").

**5.2.2**    Interim milestones and/or Substantial Completion of identified portions of the Work shall be achieved as follows:  *(Insert any interim milestones for portions of the Work with different scheduled dates for Substantial Completion)*
Individual buildings shall be released upon final building department approval.

**5.2.3**    Final Completion of the Work or identified portions of the Work shall be achieved as expeditiously as reasonably practicable.

**5.2.4**    All of the dates set forth in this Article 5 ("Contract Time(s)") shall be subject to adjustment in accordance with the General Conditions of Contract.

**5.3     Time is of the Essence.** Owner and Design-Builder mutually agree that time is of the essence with respect to the dates and times set forth in the Contract Documents.

**5.4     Liquidated Damages.** Design-Builder understands that if Substantial Completion is not attained by the Scheduled Substantial Completion Date, Owner will suffer damages which are difficult to determine and accurately specify. Design-Builder agrees that if Substantial Completion is not attained by <u>Three Hundred</u> Seventy ( <u>375</u> ) days after the Scheduled Substantial Completion Date (the "LD Date"), Design-Builder shall pay    Five. Owner <u>ONE HUNDRED FIFTY</u> Dollars ($ <u>150.00</u> ) as liquidated damages for each day that Substantial Completion extends beyond the LD Date. The liquidated damages provided herein shall be in lieu of all liability for any and all extra costs, losses, expenses, claims, penalties and any other damages, whether special or consequential, and of whatsoever nature incurred by Owner which are occasioned by any delay in achieving Substantial Completion.  *(If a GMP is not established upon execution of this Agreement, the parties should consider setting liquidated damages after GMP negotiations. If liquidated damages are applicable to any dates set forth in Section 5.2.2 hereof, this Section 5.4 will need to be modified accordingly.)*

DBIA Document No. 530 • Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

EXHIBIT

PAGE 4 OF 21

Exhibit 1

Page 13

**5.5     Early Completion Bonus.** If Substantial Completion is attained on or before _____ (_____) days before the Scheduled Substantial Completion Date (the "Bonus Date"), Owner shall pay Design-Builder at the time of Final Payment under Section 7.3 hereof an early completion bonus of _____-0-_____ Dollars (\$ \_\_-0-\_\_\_\_\_) for each day that Substantial Completion is attained earlier than the Bonus Date. *(If a GMP is not established upon execution of this Agreement, the parties should consider setting the early completion bonus after GMP negotiations. If an early completion bonus is applicable to any dates set forth in Section 5.2.2 hereof, this Section 5.5 will need to be modified accordingly.)*

# Article 6

## Contract Price

**6.1     Contract Price** .

**6.1.1     **Owner shall pay Design-Builder in accordance with Article 6 of the General Conditions of Contract a contract price ("Contract Price") equal to Design-Builder's Fee (as defined in Section 6.2 hereof) plus the Cost of the Work (as defined in Section 6.3 hereof), subject to any GMP established in Section 6.5 hereof and any adjustments made in accordance with the General Conditions of Contract.

**6.1.2     **For the specific Work set forth below, Owner agrees to pay Design-Builder, as part of the Contract Price, on the following basis: *(This is an optional section intended to provide the parties with flexibility to identify and price limited preliminary services, such as a lump sum or cost-plus arrangement for preliminary design, programming, or services necessary to enable Design-Builder to furnish Owner with a GMP before execution of this Agreement.)*

**6.2     Design-Builder's Fee**

**6.2.1     **Design-Builder's Fee shall be:

*(Choose one of the following:)*

_____ Dollars (\$ _____), as adjusted in accordance with Section 6.2.2 below.

*or*

Nine_____ percent (\_\_\_\_9 %) of the Cost of the Work, as adjusted in accordance with Section 6.2.2 below.

**6.2.2     **Design-Builder's Fee will be adjusted as follows for any changes in the Work: *(Insert financial arrangements for adjustments)*

Cost plus nine percent for all changes.

DBIA Document No. 530 • Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

EXHIBIT
PAGE 5 OF 35
Exhibit 1
Page 14

**6.3    Cost of the Work.**  The term Cost of the Work shall mean costs reasonably incurred by Design-Builder in the proper performance of the Work. The Cost of the Work shall include only the following:

.1    Wages of direct employees of Design-Builder performing the Work at the Site or, with Owner's agreement, at locations off the Site, provided, however, that the costs for those employees of Design-Builder performing design services shall be calculated on the basis of prevailing market rates for design professionals performing such services or, if applicable, those rates set forth in an exhibit to this Agreement.

.2    Wages or salaries of Design-Builder's supervisory and administrative personnel engaged in the performance of the Work and who are located at the Site or working off-Site to assist in the production or transportation of material and equipment necessary for the Work.

.3    Wages or salaries of Design-Builder's personnel stationed at Design-Builder's principal or branch offices and performing the following functions.  The reimbursable costs of personnel stationed at Design-Builder's principal or branch offices shall include a __Nine____ percent (__9__%) markup to compensate Design-Builder for the Project-related overhead associated with such personnel. *(Insert the names, job description or job title of personnel)*
Tony Hansen, Project Coordinator  procurement & coordination
William McMillan, procurement & coordination
Gordon Marvin, Procurement & coordination.

.4    Costs incurred by Design-Builder for employee benefits, premiums, taxes, insurance, contributions and assessments required by law, collective bargaining agreements, or which are customarily paid by Design-Builder, to the extent such costs are based on wages and salaries paid to employees of Design-Builder covered under Sections 6.3.1 through 6.3.3 hereof.

.5    The reasonable portion of the cost of travel, accommodations and meals for Design-Builder's personnel necessarily and directly incurred in connection with the performance of the Work.

.6    Payments properly made by Design-Builder to Subcontractors and Design Consultants for performance of portions of the Work, including any insurance and bond premiums incurred by Subcontractors and Design Consultants.

.7    Costs incurred by Design-Builder in repairing or correcting defective, damaged or nonconforming Work, provided that such defective, damaged or nonconforming Work was beyond the reasonable control of Design-Builder, or caused by the ordinary mistakes or inadvertence, and not the negligence, of Design-Builder or those working by or through Design-Builder. If the costs associated with such defective, damaged or nonconforming Work are recoverable from insurance, Subcontractors or Design Consultants, Design-Builder shall exercise best efforts to obtain recovery from the appropriate source and credit Owner if recovery is obtained.

.8    Costs, including transportation, inspection, testing, storage and handling, of materials, equipment and supplies incorporated or reasonably used in completing the Work.

.9    Costs less salvage value of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by the workers that are not fully consumed in the performance of the Work and which remain the property of Design-Builder, including the costs of transporting, inspecting, testing, handling, installing, maintaining, dismantling and removing such items.

*EXHIBIT*
*PAGE*

DBIA Document No. 530 · Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

Exhibit *1*
Page *15*

.10     Costs of removal of debris and waste from the Site.

.11     The reasonable costs and expenses incurred in establishing, operating and demobilizing the Site office, including the cost of facsimile transmissions, long-distance telephone calls, postage and express delivery charges, telephone service, photocopying and reasonable petty cash expenses.

.12     Rental charges and the costs of transportation, installation, minor repairs and replacements, dismantling and removal of temporary facilities, machinery, equipment and hand tools not customarily owned by the workers, which are provided by Design-Builder at the Site, whether rented from Design-Builder or others, and incurred in the performance of the Work.

.13     Premiums for insurance and bonds required by this Agreement or the performance of the Work.

.14     All fuel and utility costs incurred in the performance of the Work.

.15     Sales, use or similar taxes, tariffs or duties incurred in the performance of the Work.

.16     Legal costs, court costs and costs of mediation and arbitration reasonably arising from Design-Builder's performance of the Work, provided such costs do not arise from disputes between Owner and Design-Builder.

.17     Costs for permits, royalties, licenses, tests and inspections incurred by Design-Builder as a requirement of the Contract Documents.

.18     The cost of defending suits or claims for infringement of patent rights arising from the use of a particular design, process, or product required by Owner, paying legal judgments against Design-Builder resulting from such suits or claims, and paying settlements made with Owner's consent.

.19     Deposits which are lost, except to the extent caused by Design-Builder's negligence.

.20     Costs incurred in preventing damage, injury or loss in case of an emergency affecting the safety of persons and property.

.21     Other costs reasonably and properly incurred in the performance of the Work to the extent approved in writing by Owner.

**6.4     Non-Reimbursable Costs**

The following shall be excluded from the Cost of the Work:

.1     Compensation for Design-Builder's personnel stationed at Design-Builder's principal or branch offices, except as provided for in Sections 6.3.1, 6.3.2 and 6.3.3 hereof.

.2     Overhead and general expenses, except as provided for in Section 6.3 hereof, or which may be recoverable for changes to the Work.

.3     The cost of Design-Builder's capital used in the performance of the Work.

.4     If the parties have agreed on a GMP, costs that would cause the GMP, as adjusted in accordance with the Contract Documents, to be exceeded.

DBIA Document No. 530 • Standard Form of Agreement Between Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price © 1998 Design-Build Institute of America

Page 7

EXHIBIT 1
PAGE 7 OF 51

Exhibit 1
Page 16

*(The parties shall comply with the follo    'ection 6.5 based upon whether the GMP is agreed up.    ore the execution of this Agreement or will be developed and agreed upon aj... execution of this Agreement. If the parties do not use a GMP, this Section 6.5 shall be deemed inapplicable and compensation to Design-Builder shall be based on those fees and costs identified in the balance of this Article 6.)*

## 6.5   The Guaranteed Maximum Price

### 6.5.1   GMP Established Upon Execution of this Agreement

*ONE MILLION NINE HUNDRED NINETY

**6.5.1.1**  Design-Builder guarantees that it shall not exceed the GMP of <u>FIVE THOUSAND AND FIFTY NINE DOLLAR</u> Dollars (\$ <u>1,995,059.00</u> ).  Design-Builder does not guarantee any specific line item provided as part of the GMP, but agrees that it will be responsible for paying all costs of completing the Work which exceed the GMP, as adjusted in accordance with the Contract Documents. Documents used as a basis for the GMP shall be identified in an exhibit to this Agreement ("GMP Exhibit").

**6.5.1.2**  The GMP includes a Contingency in the amount of <u>-0-</u> Dollars (\$ <u>-0-</u> ) which is available for Design-Builder's exclusive use for costs that are incurred in performing the Work that are not included in a specific line item or the basis for a Change Order under the Contract Documents. By way of example, and not as a limitation, such costs include trade buy-out differentials, overtime, acceleration, costs in correcting defective, damaged or nonconforming Work, design errors or omissions and Subcontractor defaults. The Contingency is not available to Owner for any reason, including changes in scope or any other item which would enable Design-Builder to increase the GMP under the Contract Documents. Design-Builder shall provide Owner with notice of all anticipated charges against the Contingency.

### 6.5.2   GMP Established after Execution of this Agreement

**6.5.2.1**  **GMP Proposal.** If requested by Owner, Design-Builder shall submit a GMP Proposal to Owner which shall include the following, unless the parties mutually agree otherwise:

> **.1**   A proposed GMP, which shall be the sum of:
>
> > **i.**   Design-Builder's Fee as defined in Section 6.2.1 hereof;
> >
> > **ii.**   the estimated Cost of the Work as defined in Section 6.3 hereof, inclusive of any Design-Builder's Contingency as defined in Section 6.5.1.2 hereof; and
> >
> > **iii.**   if applicable, any prices established under Section 6.1.2 hereof.
>
> **.2**   A list of the drawings and specifications, including all addenda, used as the basis for the GMP proposal;
>
> **.3**   A list of the assumptions and clarifications made by Design-Builder in the preparation of the GMP Proposal, which list is intended to supplement the information contained in the drawings and specifications;
>
> **.4**   The Scheduled Substantial Completion Date upon which the proposed GMP is based, to the extent said date has not already been established under Section 5.2 hereof, and a schedule upon which the Scheduled Substantial Completion Date is based;
>
> **.5**   If applicable, a list of allowances and a statement of their basis;
>
> **.6**   If applicable, a schedule of alternate prices;
>
> **.7**   If applicable, a schedule of unit prices;

DBIA Document No. 530 • Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

EXHIBIT
Exhibit  /   PAGE  8 OF
Page  17

.8       If applicable, a statement of Additional Services; and

.9       The time limit for acceptance of the GMP Proposal.

**6.5.2.2  Review and Adjustment to GMP Proposal.**  After submission of the GMP Proposal, Design-Builder and Owner shall meet to discuss and review the GMP Proposal.  If Owner has any comments regarding the GMP Proposal, or finds any inconsistencies or inaccuracies in the information presented, it shall promptly give written notice to Design-Builder of such comments or findings.  If appropriate, Design-Builder shall, upon receipt of Owner's notice, make appropriate adjustments to the GMP Proposal.

**6.5.2.3  Acceptance of GMP Proposal.**  If Owner accepts the GMP Proposal, as may be amended by Design-Builder, the GMP and its basis shall be set forth in an amendment to this Agreement.

**6.5.2.4  Failure to Accept the GMP Proposal.**  If Owner rejects the GMP Proposal, or fails to notify Design-Builder in writing on or before the date specified in the GMP Proposal that it accepts the GMP Proposal, the GMP Proposal shall be deemed withdrawn and of no effect.  In such event, Owner and Design-Builder shall meet and confer as to how the Project will proceed, with Owner having the following options:

.1       Owner may suggest modifications to the GMP Proposal, whereupon, if such modifications are accepted in writing by Design-Builder, the GMP Proposal shall be deemed accepted and the parties shall proceed in accordance with Section 6.5.2.3 above;

.2       Owner may authorize Design-Builder to continue to proceed with the Work on the basis of reimbursement as provided in Section 6.1 hereof without a GMP, in which case all references in this Agreement to the GMP shall not be applicable; or

.3       Owner may terminate this Agreement for convenience in accordance with Article 8 hereof; provided, however, in this event, Design-Builder shall not be entitled to the payment provided for in Section 8.2 hereof.

If Owner fails to exercise any of the above options, Design-Builder shall have the right to (i) continue with the Work as if Owner had elected to proceed in accordance with Item .2 above, and be paid by Owner accordingly, unless and until Owner notifies it in writing to stop the Work, or (ii) suspend performance of Work in accordance with Section 11.3.1 of the General Conditions of Contract, provided, however, that in such event Design-Builder shall not be entitled to the payment provided for in Section 8.2 hereof.

**6.5.3   Savings**

**6.5.3.1**  If the sum of the actual Cost of the Work and Design-Builder's Fee (and, if applicable, any prices established under Section 6.1.2 hereof) is less than the GMP, as such GMP may have been adjusted over the course of the Project, the difference ("Savings") shall be shared as follows:

*(Choose one of the following:)*

__Twenty__ percent ( _20_ %) to Design-Builder and __Eighty__ percent ( _80_ %) to Owner.

*or*

The first _____ Dollars ($ _____) of Savings shall be provided to
*(choose either Design-Builder or Owner)* _____, with the balance of Savings, if any,
shared _____ percent (_____%) to Design-Builder and _____ percent
(_____%) to Owner.

DBIA Document No. 530 • Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

Exhibit _____
Page _1B_

EXHIBIT ___
PAGE ___ OF ___

**6.5.3.2** Savings shall be calculated and paid as part of Final Payment under Section 7.3 hereof, with the understanding that to the extent Design-Builder incurs costs after Final Completion which would have been payable to Design-Builder as a Cost of the Work, Design-Builder shall be entitled to payment from Owner for that portion of such costs that were distributed to Owner as Savings.

## Article 7

## Procedure for Payment

**7.1    Progress Payments**

**7.1.1**    Design-Builder shall submit to Owner on the ___Tenth_____ (_10th) day of each month, beginning with the first month after the Date of Commencement, Design-Builder's Application for Payment in accordance with Article 6 of the General Conditions of Contract.

**7.1.2**    Owner shall make payment within ten (10) days after Owner's receipt of each properly submitted and accurate Application for Payment in accordance with Article 6 of the General Conditions of Contract, but in each case less the total of payments previously made, and less amounts properly withheld under Section 6.3 of the General Conditions of Contract.

**7.1.3**    If Design-Builder's Fee under Section 6.2.1 hereof is a fixed amount, the amount of Design-Builder's Fee to be included in Design-Builder's monthly Application for Payment and paid by Owner shall be proportional to the percentage of the Work completed, less payments previously made on account of Design-Builder's Fee.

**7.2    Retainage on Progress Payments**

**7.2.1**    Owner will retain ____-0-____ percent (_-0- %) of each Application for Payment provided, however, that when fifty percent (50%) of the Work has been completed by Design-Builder, Owner will not retain any additional amounts from Design-Builder's subsequent Applications for Payment. Owner will also reasonably consider reducing retainage for Subcontractors completing their work early in the Project.

**7.2.2**    Upon Substantial Completion of the entire Work or, if applicable, any portion of the Work, pursuant to Section 6.6 of the General Conditions of Contract, Owner shall release to Design-Builder all retained amounts relating, as applicable, to the entire Work or completed portion of the Work, less an amount equal to the reasonable value of all remaining or incomplete items of Work as noted in the Certificate of Substantial Completion.

**7.3    Final Payment.** Design-Builder shall submit its Final Application for Payment to Owner in accordance with Section 6.7 of the General Conditions of Contract. Owner shall make payment on Design-Builder's properly submitted and accurate Final Application for Payment within ten (10) days after Owner's receipt of the Final Application for Payment, provided that Design-Builder has satisfied the requirements for final payment set forth in Section 6.7.2 of the General Conditions of Contract.

**7.4    Interest.** Payments due and unpaid by Owner to Design-Builder, whether progress payments or final payment, shall bear interest commencing five (5) days after payment is due at the rate of _Twelve_ percent (_12_ %). per anum, compounded monthly.

**7.5    Record Keeping and Finance Controls.** Design-Builder acknowledges that this Agreement is to be administered on an "open book" arrangement relative to Costs of the Work. Design-Builder shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management, using accounting and control systems in accordance with generally accepted accounting principles and as

DBIA Document No. 530 • Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

PAGE 10 OF 31

Exhibit 1
Page 19

may be provided in the Contract Documents.  During the performance of the Work and for a period of three (3) years after Final Payment, Owner and Owner's accountants shall be afforded access from time to time, upon reasonable notice, to Design-Builder's records, books, correspondence, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to the Work, all of which Design-Builder shall preserve for a period of three (3) years after Final Payment.

## Article 8

### Termination for Convenience

**8.1**    Upon ten (10) days' written notice to Design-Builder, Owner may, for its convenience and without cause, elect to terminate this Agreement.  In such event, Owner shall pay Design-Builder for the following:

.1    All Work executed and for proven loss, cost or expense in connection with the Work;

.2    The reasonable costs and expenses attributable to such termination, including demobilization costs and amounts due in settlement of terminated contracts with Subcontractors and Design Consultants; and

.3    *(Choose one of the following:)*

The fair and reasonable sums for overhead and profit on the sum of items .1 and .2 above.

*or*

Overhead and profit in the amount of __Nine__ percent (__9__%) on the sum of items .1 and .2 above.

**8.2**    In addition to the amounts set forth in Section 8.1 above, Design-Builder shall be entitled to receive one of the following as applicable:

.1    If Owner terminates this Agreement prior to commencement of construction, Design-Builder shall be paid __One__ percent (__1__%) of the remaining balance of the Contract Price or, if a GMP has not been established, the remaining balance of the most recent estimated Contract Price.

.2    If Owner terminates this Agreement after commencement of construction, Design-Builder shall be paid __Three__ percent (__3__%) of the remaining balance of the Contract Price or, if a GMP has not been established, the remaining balance of the most recent estimated Contract Price.

**8.3**    If Owner terminates this Agreement pursuant to Section 8.1 above and proceeds to design and construct the Project through its employees, agents or third parties, Owner's rights to use the Work Product shall be as set forth in Section 4.3 hereof.

EXHIBIT __1__
PAGE __11__ OF __37__

DBIA Document No. 530 • Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

Page 11

Exhibit __1__
Page __22__

*(The following Article 9 should only be used if the Owner and Design-Builder agree to establish their respective representatives at the time the Agreement is executed rather than during the performance of the Project.)*

## Article 9

## Representatives of the Parties

**9.1    Owner's Representatives**

**9.1.1**    Owner designates the individual listed below as its Senior Representative ("Owner's Senior Representative"), which individual has the authority and responsibility for avoiding and resolving disputes under Section 10.2.3 of the General Conditions of Contract *(Identify individual's name, title, address and telephone numbers)*
Christopher Littleton, President
BBGL Investments, LLC
2200 Siskiyou Blvd.
Medford, OR 97504

**9.1.2**    Owner designates the individual listed below as its Owner's Representative, which individual has the authority and responsibility set forth in Section 3.4 of the General Conditions of Contract *(Identify individual's name, title, address and telephone numbers)*

James A. Garrison
Vice President
BBGL Investments LLC
2200 Siskiyou Blvd.
Medford, OR 97504

Steven L. Borges
Treasurer
BBGL Investments, LLC
2200 Siskiyou Blvd.
Medford, OR 97504

Andrew Leeds
Secretary
BBGL Investments, LLC
2200 Siskiyou Blvd.
Medford, OR 97504

**9.2    Design-Builder's Representatives**

**9.2.1**    Design-Builder designates the individual listed below as its Senior Representative ("Design-Builder's Senior Representative"), which individual has the authority and responsibility for avoiding and resolving disputes under Section 10.2.3 of the General Conditions of Contract *(Identify individual's name, title, address and telephone numbers)*

Russell F. Noah, President
R. E. Noah and Company
241 NE Ivan Street
Roseburg, OR 97470            541-672-2550

**9.2.2**    Design-Builder designates the individual listed below as its Design-Builder's Representative, which individual has the authority and responsibility set forth in Section 2.1.1 of the General Conditions of Contract *(Identify individual's name, title, address and telephone numbers)*

William McMillan
Project Manager
R. E. Noah and Company
241 NE Ivan Street
Roseburg, OR 97470

Tony R. Hansen
Project Manager, Estimator
R. E. Noah and Company
241 NE Ivan Street
Roseburg, OR 97470

Gordon Marvin
Project Manager
R. E. Noah and Company
241 NE Ivan Street
Roseburg, OR 97470

EXHIBIT 1
PAGE 1 OF 8

DBIA Document No. 530 • Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America



Exhibit 1
Page 21

## Article 10

## Bonds and Insurance

**10.1    Insurance.** Design-Builder shall procure in accordance with Article 5 of the General Conditions of Contract the following insurance coverages: *(Attach Insurance Schedule indicating the required coverage, amount of required coverage, duration of coverage, required rating of insurance carriers and any other insurance requirements required of the parties)*

**10.2    Bonds and Other Performance Security.** Design-Builder shall provide the following performance bond and labor and material payment bond or other performance security: *(Indicate the amount of bonds and any other conditions of the bonds or other security)*

Course of construction insurance has been purchased at the direction of the bank as of 11/21/07.  This policy is good for 365 days.  Renewal of the existing policy or new policy available for remaining work via change order (if required).

## Article 11

## Other Provisions

**11.1    Other provisions, if any, are as follows:** *(Insert any additional provisions)*

1.  All members of BBGL Investments, LLC are individually liable for all obligations of BBGL Investments, LLC.
2.  Owner has reviewed and accepted all contract documents (all plans, addendum #1, and proposal).
3.  The owner is solely responsible for all aspects of the project with regards to marketability and profitability.

In executing this Agreement, Owner and Design-Builder each individually represents that it has the necessary financial resources to fulfill its obligations under this Agreement, and each has the necessary corporate approvals to execute this Agreement, and perform the services described herein.

**OWNER:**

BBGL Investments LLC
*(Name of Owner)*

*(Signature)*

Christopher Littleton
*(Printed Name)*

President
*(Title)*

Date: 1/4/08

**DESIGN-BUILDER:**

R. E. Noah and Company
*(Name of Design-Builder)*

*(Signature)*

Russell F. Noah
*(Printed Name)*

President
*(Title)*

Date: 1/3/08

**Caution:  You should sign an original DBIA document which has this caution printed in blue.  An original assures that changes will not be obscured as may occur when documents are reproduced.**

DBIA Document No. 530 • Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

EXHIBIT 1
PAGE 12 OF 17

Exhibit 1
Page 22

# R.E. NOAH AND CO. INC.

## GENERAL CONTRACTORS

241 N.E. IVAN STREET • ROSEBURG, OREGON 97470
Phone (541) 672-2550 • Fax (541) 672-6213 • renoah.com

December 27, 2007

To:     BBGL, LLC
Attn:   Jim Garrison, Chris Littleton, Steve Borges
        6433 Crater Lake Highway
        Central Point, OR 97502

Re:     Phase I - New Mini Storage Facility

R. E. Noah and Co. proposes a bid of **$1,995,059.00** *(One Million Nine Hundred Ninety Five Thousand Fifty Nine Dollars)* for Phase I as detailed below:
To Include:

1.  As per plans by Rogers Engineering, (sheets T, A-1, A-2, A-3, A-4, A-5, S-1, & S-2) dated 12/19/07.
2.  As per plans by Pinnacle Engineering (sheets C1.0, C2.0, C3.0, C4.0, C5.0, C6.0, C7.0, ESC1.0, ESC2.0, ESC3.0, & ESC4.0) dated 12/12/07.
3.  To include addendum #1 by R.E. Noah and Company, dated 12/14/07.
4.  Construction staking.
5.  Asbestos abatement as existing buildings.
6.  Erosion control as detailed on plans.
7.  Grub and clear site of vegetation.
8.  Storm system to include adequate catch basins drained northwest corner of property into bioswale. All downspouts to flow onto asphalt and drain to catch basins.
9.  Fire system with fire hydrants per drawings.
10. 6" crushed rock under buildings and 9" crushed rock with geotech fabric under 3" asphalt paving. All spoils to remain onsite.
11. 444 LF of extruded curb is included with parking lot striping & ADA signage for office.
12. Fencing to be 6' high with three strand barbed wire. Entry gate, operator, and keypad and free exit (gate system allowance of $15,000.00).
13. Footing excavation and backfill are included.
14. Concrete per plans with 3000 PSI concrete. All concrete to have 1% calcium chloride and hot water for winter time construction. All concrete to have 24# Novamesh 850 (per yard) reinforcement and superplasticizer. 600 yards figured with April 1, 2008 price increases.
15. Drill and epoxy masonry vertical bars (with $1,000.00 allowance for special inspection).
16. 4' high, 6" masonry dry block wainscot throughout (with the exception of the north wall of building #1, which is not exposed to the public view).



BUTLER
BUILDER

EXHIBIT
PAGE 11 OF 31

Exhibit 1
Page 23

17. Includes (24) 4" bollards embedded in concrete 3' minimum, filled with concrete and painted safety yellow.
18. Includes gutters and down spouts on all new buildings to drain to asphalt and sheet to catch basins.
19. Mini roll up doors with 1 handle (67 @ 3'6"x7'0" and 339 @ 8'6x7'0").
20. Includes (18) 4'0"x7'0" man doors as shown (16 lever handle passage and 2 push/pull).
21. 3 hour fire walls (4) to include 3 layers 5/8" sheet rock fire taped on each side of wall.
22. Painting for man doors, frames, and bollards.
23. Includes fire extinguishers in cabinets, per plan.
24. Fabrication, delivery, and installation of 63,900 sq ft of mini storage is included, with lock rib roof (upgraded) and standard wall panels. Conditioned spaces to receive vapor barrier R-13 in the walls and vapor barrier R-19 in the ceilings. All unheated areas to receive 2" vapor barrier insulation in roof only and no wall insulation. Metal building supplier to provide roof curbs and structural components for HVAC units. All mullions to be 26 ga. standard wall panels in lieu of mullion covers. Roof panels, wall panels, and trims to be 26 ga.
25. Gas piping (routing may vary from plan as this is design build).
26. HVAC as per drawings and Addendum #1. All units to have fully programmable thermostats. System is designed upon 60-80 degree fahrenheit range with humidity controlled by thermostat in combination with condenser units. System to have spiral duct with diffusors to disperse conditioned air in attic space with grilles at hallway ceiling systems. This system is designed for the units to be at least 50% occupied. Prior to 50% filled, the system may have fluctuations beyond the set parameters. Includes gas piping inside buildings and mechanical engineering.
27. Electrical shall include 600 amp 3 phase service on building #3 with 100 amp sub-panels to buildings 1, 2, & 4. Electrical based on condensors with gas furnaces. 200 amp service for temporary office and temporary construction power. 60W jar light in all 10x25 units on timers, hallway lighting on timers at each man door, exterior wall pack lighting of security, and additional power outlets for camera system
28. New camera system to include conduit, ditching and backfill to feed cameras throughout the facility for exterior coverage. Includes digital recording system for storage of security footage for a one month period. Note: CCTV has been moved to NW corner of buildings 2 and 3.
29. Knox box for fire department emergency access.
30. Building cleaning is included (broom clean).
31. Includes 750 LF of temporary fencing for one year.
32. Rented 12'x32' office with bathroom facility and 2 offices for 1 year.
33. Supervision, general labor and rubbish removal have been figured for our work.
34. Proposal based on DBIA 525 standard contract with form 535 general conditions. See draft attached, with general conditions.

EXHIBIT 1
PAGE 15 OF 59

Exhibit 1
Page 24

To Exclude anything not specifically mentioned above, including, but not limited to:

1.     Any comments by any governing jurisdiction affecting our scope of work.
2.     Special inspections.
3.     Landscaping and irrigation.
4.     Unforseen site conditions.
5.     All fees not listed above, including but not limited to: Gas, Power, Water Meter, SDC's.
6.     Soils testing.
7.     Performance and payment bond.
8.     Course of construction insurance or extensions (purchased under previous contract).
9.     Plans, engineering, and permit and plan check fees (purchased under previous contract).

**Alternate #1:**
Deduct masonry wainscot:                          ($30,372.00)

**Alternate #2:**
Provide permanent fencing at south edge of phase 1        $   5,638.00

**Alternate #3:**
Provide 400 amp main service *(not suggested)*:           ($   950.00)

Proposed Unit Mix Phase I:

| | |
|---|---|
| 13 ea. | 5'x5' Climate Controlled |
| 39 ea. | 5'x10' Climate Controlled |
| 83 ea. | 10'x10' Climate Controlled |
| 92 ea. | 10'x15' Climate Controlled |
| 56 ea. | 5'x10' Unconditioned |
| 44 ea. | 10'x20' Unconditioned |
| 83 ea. | 10'x25' Unconditioned |

410 ea.        Total units

Thank you for the opportunity to provide pricing on your project. This bid is based upon a January start and is good for 30 days from the date of this quote. We reserve the right to adjust pricing based upon current market conditions after 30 days.
Sincerely,

Tony Hansen
Estimator

EXHIBIT  1
PAGE 16 OF 21

Exhibit 1
Page 25

Case 6:09-cv-06259-HO    Document 37    Filed 03/01/10    Page 29 of 57    Page ID#: 29

# R.E. NOAH AND CO. INC.

## GENERAL CONTRACTORS

241 N.E. IVAN STREET • ROSEBURG, OREGON 97470
Phone (541) 672-2550 • Fax (541) 672-6213 • renoah.com

December 14, 2007

ADDENDUM #1

BBGL Mini Storage
7845 Highway 99 N
Roseburg, OR 97470

The following changes have been made to the plans for clarification and to address engineering issues. Changes associated with this addendum is to be incorporated into all bids. Adjusted plans are available for review at the office of R. E. Noah and Company (241 NE Ivan, Roseburg).

1. 1 & 2/A-1: Replace "Phase Line" with "Match Line".
2. Delete 3 hour wall notation on 1/A-1 at match line.
3. 2/A-1: Add note "3 HR Wall" 40' east of match line.
4. 1/A-1: Move furnace at east side (north) to east/west hallway and 30' east of current location. Add furnace 50' west of relocated furnace. Add condensers with fiberglass pad directly north of furnaces outside the building line of building #1.
5. Additional HVAC clarifications: HVAC contractor may relocate furnaces and roof top units to economize the system. HVAC contractor to provide ducting with diffusors into storage units and main hallway, as well as return system to evenly heat/cool the facility. HVAC supplier may provide all RTU's in lieu of split systems in building #1. Unit minimum sizing to be as follows:
   Building #1 (West to East): [70K,5T], [98K,6.5T], [92K,6.5T], & [78K,5T].
   Building #2 & #3 (West to East): [61K,4T], [61K,4T], & [44K,3T].
   System designed for 50% occupied load (conditioned volume maybe reduced by 40%). Units to utilize RF410 freon.
6. Engineering stamp expiration date changed to 12-31-08.
7. Codes and Loads "Proposed Building Area #1" adjusted to read:
   1A-5500/3HR/1B-9900/3HR/1C-11000.
8. 2/A-1: Move southeast door 20' to the west. Add door (type 3) to 20' west of southeast corner of building #1. Create hallway with 3 - 5'x10' units and 1 - 5'x5' unit. Delete 10'x25' and 10'x10' unit at hall location.
9. Sheets A-1 & A-2: Add door type 4. Door type 4 be 4'x7' with closer, 4"x25" insulated relite, and push pull.
10. Sheets A-1 & A-2: Add note to door schedule "Door types 3 & 4 to receive sweeps, weather seals package, thresholds, and polyurathane core (minimum R-13).
11. 1/A-1: Change door on west wall of building #1 to type 4.
12. 1/A-1: Change far west door on south side of building #1 to type 4.



BUILDER

EXHIBIT 1 OF 24
PAGE 1 OF 24

Exhibit 1
Page 26

13. A-1 & A-2: Change door type 3 relite to 4"x25" insulated.
14. A-1 & A-2: Add note "Metal building manufacturer to provide additional structural components to support 800 lb roof top units. Provide alternate to provide additional structurals for roof top units at building #1.
15. A-1 & A-2: Add note "Metal building manufacturer to supply roof curbs for RTU's add per curb. Curbs to be insulated with 48"x60" dimension minimum.
16. Provide exit sign and emergency exit light with battery backup at all man doors.
17. Provide 70W wall pack tied to exit light battery backup at all man doors.
18. Elevations revised to reflect floor plan changes.
19. 1/S-1: Revise footing width to 2'0" with 3 - #5 continuous.
20. 2/S-1: Replace "fiber mesh" with "Nova Mesh". Revise footing width to 2'0" with 3 - #5 continuous.
21. 4/S-1: Depth of lower thickened edge clarified to 1'0".
22. 7/S-1: Depth of lower thickened edge clarified to 1'0". Show metal building connection and 1' step with wall panels and trims.
23. 8/S-1: Rename from "1 Hour Exterior Wall" to "Metal Wall". Remove all references and drawings of gypsum board assemblies.
24. 9 & 10/S-1: Revise north edge of building #1 notations from 1/S-1 to 8/S-1.
25. 2/S-2: Delete foundation plan.
26. Alternate #1 to revert foundations to 1'x1' thickened edge with 2 - #4 continuous (similar to 8/S-1 with 1-1/2"x9-1/2" notch.
27. Remove errant line through hallway on 2/A-1, 70' west of east end of building #1.
28. Replace 70W wall pack tied to exit battery backup with 70W wall pack on east end of building #1 (2/A-1).
29. Title sheet, A-1, A-2, A-3, A-4, A-5, S-1, and S-2 redated to 12/14/07.
30. C4.0 - Plumbing and CCTV underground piping locations are diagrammatic. Contractors may reroute piping, based upon written acceptance by general contractor at least 24 hours prior to bid.
31. Title Sheet: Unit mix and associated handicap accessible units revised as follows:

| | | | |
|---|---|---|---|
| 5x5 | CC = 13 ea. | / | 1 HC |
| 5x10 | CC = 39 ea. | / | 2 HC |
| 10x10 | CC= 83 ea. | / | 5 HC |
| 10x15 | CC= 92 ea. | / | 5 HC |
| 5x10 = | 56 ea. | / | 3 HC |
| 10x20 = | 44 ea. | / | 3 HC |
| 10x25 = | 83 ea. | / | 5 HC |

The unit mix total is now 410 units. On 9/S-1 delete the 6th and 7th handicap ramp from the west end on the south side of building #1.
32. Additional Instructions to Bidders by R. E. Noah and Company to be incorporated into this addendum. Where conflicts between the two documents occur, this addendum items 1-32 shall control.


End of Addendum.

EXHIBIT
PAGE 30 OF 39

Exhibit 1
Page 27

# R.E. NOAH AND CO. INC.

## GENERAL CONTRACTORS

241 N.E. IVAN STREET • ROSEBURG, OREGON 97470
Phone (541) 672-2550 • Fax (541) 672-6213 • renoah.com

December 11, 2007

BBGL Mini Storage
7845 Old Highway 99 North
Roseburg, OR 97470

## ADDITIONAL INSTRUCTIONS TO BIDDERS:

1. All bids to be received on or before 2 pm, December 21, 2007 by mail, fax or email. This date maybe ammended, if enough bidders are not able to complete their bids in time.
2. All bidders agree to R. E. Noah and Company's subcontractor term book dated September 1, 200. The term book is available from 8 am - 5 pm, Monday - Friday at 241 NE Ivan.
3. Bids shall include all work described within the full set of drawings (noted on title page). All subcontractors may review a full set of drawings at our office at 241 NE Ivan in Roseburg from 8 am - 5pm, Monday - Friday. If this is inconvenient, please contact Tony Hansen at 541.672.2550 ext. 15 to have a set made available.
4. Alternate #1: Provide metal wall panels in lieu of masonry wainscot and associated rebar.
5. Alternate #2: Provide permanent 6' high chain link fence with 3 strand barbed wire in lieu of temporary fencing.
6. Alternate #3: Provide 400 amp, 3 phase switchgear in lieu of 600 amp panel (main transformer to remain 600 amp).
7. R. E. Noah and Company reserves the right to select a bidder based upon the owner's preference and in lieu of the low bidder.
8. Any discrepancies within the plans to be brought to the attention of the general contractor at least 48 hours prior to bid by written letter, facsimile, or confirmed email.
9. Please read the title sheet under "design build contractor notes" for further information on responsibilities for various scopes of work.
10. Existing iron gates to be removed and salvaged by owner prior to demolition.
11. Please direct all inquiries regarding the project to Tony Hansen at R. E. Noah and Company.
12. Please disregard note on sheet C4.0 "Stub out gas, electric, and CCTV conduits for building 5, 6, 7, and 8". These futures will not be a part of this project.
13. Please disregard note on C4.0 "Stub out future CCTV and electrical conduits for building #9". This portion of the work is deleted from the project.
14. Buildings are to be labeled as shown in the architectural sheets and structural sheets. Sheet C4.0 notes that sub panels should feed from building #3, however this should be feeding from building #2 (as shown). C4.0 also notes that gas lines to buildings #3 & #4 should be low pressure. These notes should indicate building #2 & #3 as shown.



BUTLER
BUILDER

EXHIBIT
PAGE 10 OF 30

Exhibit 1
Page 28

15.   Several civil sheets indicate sidewalks that are not noted at the east end of building #1. Please disregard the sidewalk at the east end of building #1.

16.   Please add a 4'x4' ADA concrete landing centered at 52'6" from the east end of building #1 on the south side of the building.

Thank you for your interest in this project.  Projected start date is January 7, 2008.
Sincerely,

Tony Hansen
Estimator

EXHIBIT 1
PAGE 21 OF 94
Exhibit 1
Page 29



**DESIGN-BUILD
INSTITUTE OF AMERICA**

# Standard Form of General Conditions
# of Contract Between Owner and Design-Builder

*This document has important legal consequences. Consultation with
an attorney is recommended with respect to its completion or modification.*

## Table of Contents

| | | |
|---|---|---|
| Article 1: | General | 1 |
| Article 2: | Design-Builder's Services and Responsibilities | 1 |
| Article 3: | Owner's Services and Responsibilities | 5 |
| Article 4: | Hazardous Conditions and Differing Site Conditions | 6 |
| Article 5: | Insurance and Bonds | 7 |
| Article 6: | Payment | 9 |
| Article 7: | Indemnification | 11 |
| Article 8: | Time | 12 |
| Article 9: | Changes to the Contract Price and Time | 12 |
| Article 10: | Contract Adjustments and Disputes | 14 |
| Article 11: | Stop Work and Termination for Cause | 15 |
| Article 12: | Miscellaneous | 17 |

NOTE*  Cover Page Of General Conditins Attached.    (please initial)

JG        RN

EXHIBIT 1
PAGE 2 OF 31

Exhibit 1
Page 30

# Article 1
## General

## 1.1 Mutual Obligations

**1.1.1** Owner and Design-Builder commit at all times to cooperate fully with each other, and proceed on the basis of trust and good faith, to permit each party to realize the benefits afforded under the Contract Documents.

## 1.2 Basic Definitions

**1.2.1** *Agreement* refers to the executed contract between Owner and Design-Builder under either DBIA Document No. 525, *Standard Form of Agreement Between Owner and Design-Builder — Lump Sum* (1998 Edition) or DBIA Document No. 530, *Standard Form of Agreement Between Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price* (1998 Edition).

**1.2.2** *Day* or *Days* shall mean calendar days unless otherwise specifically noted in the Contract Documents.

**1.2.3** *Design Consultant* is a qualified, licensed design professional who is not an employee of Design-Builder, but is retained by Design-Builder, or employed or retained by anyone under contract with Design-Builder or Subcontractor, to furnish design services required under the Contract Documents.

**1.2.4** *Hazardous Conditions* are any materials, wastes, substances and chemicals deemed to be hazardous under applicable Legal Requirements, or the handling, storage, remediation, or disposal of which are regulated by applicable Legal Requirements.

**1.2.5** *General Conditions of Contract* refer to this DBIA Document No. 535, *Standard Form of General Conditions of Contract Between Owner and Design-Builder* (1998 Edition).

**1.2.6** *Legal Requirements* are all applicable federal, state and local laws, codes, ordinances, rules, regulations, orders and decrees of any government or quasi-government entity having jurisdiction over the Project or Site, the practices involved in the Project or Site, or any Work.

**1.2.7** *Owner's Project Criteria* are developed by or for Owner to describe Owner's program requirements and objectives for the Project, including use, space, price, time, site and expandability requirements, as well as submittal requirements and other requirements governing Design-Builder's performance of the Work. Owner's Project Criteria may include conceptual documents, design criteria, performance requirements and other Project-specific technical materials and requirements.

**1.2.8** *Site* is the land or premises on which the Project is located.

**1.2.9** *Subcontractor* is any person or entity retained by Design-Builder as an independent contractor to perform a portion of the Work and shall include materialmen and suppliers.

**1.2.10** *Sub-Subcontractor* is any person or entity retained by a Subcontractor as an independent contractor to perform any portion of a Subcontractor's Work and shall include materialmen and suppliers.

**1.2.11** *Substantial Completion* is the date on which the Work, or an agreed upon portion of the Work, is sufficiently complete so that Owner can occupy and use the Project or a portion thereof for its intended purposes.

**1.2.12** *Work* is comprised of all Design-Builder's design, construction and other services required by the Contract Documents, including procuring and furnishing all materials, equipment, services and labor reasonably inferable from the Contract Documents.

# Article 2
## Design-Builder's Services and Responsibilities

## 2.1 General Services

**2.1.1** Design-Builder's Representative shall be reasonably available to Owner and shall have the necessary expertise and experience required to supervise the Work. Design-Builder's Representative shall communicate regularly with Owner and shall be vested with the authority to act

DBIA Document No. 535 • Standard Form of General Conditions of Contract Between Owner and Design-Builder
© 1998 Design-Build Institute of America

Page 1

EXHIBIT
PAGE __/__ OF __

Exhibit /
Page 3/

on behalf of Design-Builder.    Design-Builder's Representative may be replaced only with the mutual agreement of Owner and Design-Builder.

2.1.2    Design-Builder shall provide Owner with a monthly status report detailing the progress of the Work, including whether (i) the Work is proceeding according to schedule, (ii) discrepancies, conflicts, or ambiguities exist in the Contract Documents that require resolution, (iii) health and safety issues exist in connection with the Work, and (iv) other items require resolution so as not to jeopardize Design-Builder's ability to complete the Work for the Contract Price and within the Contract Time(s).

2.1.3    Design-Builder shall prepare and submit, at least three (3) days prior to the meeting contemplated by Section 2.1.4 hereof, a schedule for the execution of the Work for Owner's review and response. The schedule shall indicate the dates for the start and completion of the various stages of Work, including the dates when Owner information and approvals are required to enable Design-Builder to achieve the Contract Time(s).  The schedule shall be revised as required by conditions and progress of the Work, but such revisions shall not relieve Design-Builder of its obligations to complete the Work within the Contract Time(s), as such dates may be adjusted in accordance with the Contract Documents.  Owner's review of and response to the schedule shall not be construed as relieving Design-Builder of its complete and exclusive control over the means, methods, sequences and techniques for executing the Work.

2.1.4    The parties will meet within seven (7) days after execution of the Agreement to discuss issues affecting the administration of the Work and to implement the necessary procedures, including those relating to submittals and payment, to facilitate the ability of the parties to perform their obligations under the Contract Documents.

## 2.2    Design Professional Services

2.2.1    Design-Builder shall, consistent with applicable state licensing laws, provide through qualified, licensed design professionals employed by Design-Builder, or procured from qualified, independent licensed Design Consultants, the necessary design services, including architectural, engineering and other design professional services, for the preparation of the required drawings, specifications and other design submittals to permit

Design-Builder to complete the Work consistent with the Contract Documents.  Nothing in the Contract Documents is intended or deemed to create any legal or contractual relationship between Owner and any Design Consultant.

## 2.3    Standard of Care for Design Professional Services

2.3.1    The standard of care for all design professional services performed to execute the Work shall be the care and skill ordinarily used by members of the design profession practicing under similar conditions at the same time and locality of the Project.    Notwithstanding the preceding sentence, if the parties agree upon specific performance standards for any aspect of the Work, which standards are to be set forth in an exhibit to the Agreement entitled "Performance Standard Requirements," the design professional services shall be performed to achieve such standards.

## 2.4    Design Development Services

2.4.1    Design-Builder and Owner shall, consistent with any applicable provision of the Contract Documents, agree upon any interim design submissions that Owner may wish to review, which interim design submissions may include design criteria, drawings, diagrams and specifications setting forth the Project requirements.  On or about the time of the scheduled submissions, Design-Builder and Owner shall meet and confer about the submissions, with Design-Builder identifying during such meetings, among other things, the evolution of the design and any significant changes or deviations from the Contract Documents, or, if applicable, previously submitted design submissions. Minutes of the meetings will be maintained by Design-Builder and provided to all attendees for review. Following the design review meeting, Owner shall review and approve the interim design submissions in a time that is consistent with the turnaround times set forth in Design-Builder's schedule.

2.4.2    Design-Builder shall submit to Owner Construction Documents setting forth in detail drawings and specifications describing the requirements for construction of the Work.  The Construction Documents shall be consistent with the latest set of interim design submissions, as such submissions may have been modified in a design review meeting.  The parties shall have a design review meeting to discuss, and Owner shall review

and approve, the Construction Documents in accordance with the procedures set forth Section 2.4.1 above. Design-Builder shall proceed with construction in accordance with the approved Construction Documents and shall submit one set of approved Construction Documents to Owner prior to commencement of construction.

**2.4.3**  Owner's review and approval of interim design submissions and the Construction Documents is for the purpose of mutually establishing a conformed set of Contract Documents compatible with the requirements of the Work. Neither Owner's review nor approval of any interim design submissions and Construction Documents shall be deemed to transfer any design liability from Design-Builder to Owner.

**2.4.4**  To the extent not prohibited by the Contract Documents or Legal Requirements, Design-Builder may prepare interim design submissions and Construction Documents for a portion of the Work to permit construction to proceed on that portion of the Work prior to completion of the Construction Documents for the entire Work.

**2.5     Legal Requirements**

**2.5.1**  Design-Builder shall perform the Work in accordance with all Legal Requirements and shall provide all notices applicable to the Work as required by the Legal Requirements.

**2.5.2**  The Contract Price and/or Contract Time(s) shall be adjusted to compensate Design-Builder for the effects of any changes in the Legal Requirements enacted after the date of the Agreement affecting the performance of the Work, or if a Guaranteed Maximum Price is established after the date of the Agreement, the date the parties agree upon the Guaranteed Maximum Price. Such effects may include, without limitation, revisions Design-Builder is required to make to the Construction Documents because of changes in Legal Requirements.

**2.6     Government Approvals and Permits**

**2.6.1**  Except as identified in an Owner's Permit List attached as an exhibit to the Agreement, Design-Builder shall obtain and pay for all necessary permits, approvals, licenses, government charges and inspection fees required for the prosecution of the Work by any government or quasi-government entity having jurisdiction over the Project.

**2.6.2**  Design-Builder shall provide reasonable assistance to Owner in obtaining those permits, approvals and licenses that are Owner's responsibility.

**2.7     Design-Builder's Construction Phase Services**

**2.7.1**  Unless otherwise provided in the Contract Documents to be the responsibility of Owner or a separate contractor, Design-Builder shall provide through itself or Subcontractors the necessary supervision, labor, inspection, testing, start-up, material, equipment, machinery, temporary utilities and other temporary facilities to permit Design-Builder to complete construction of the Project consistent with the Contract Documents.

**2.7.2**  Design-Builder shall perform all construction activities efficiently and with the requisite expertise, skill and competence to satisfy the requirements of the Contract Documents. Design-Builder shall at all times exercise complete and exclusive control over the means, methods, sequences and techniques of construction.

**2.7.3**  Design-Builder shall employ only Subcontractors who are duly licensed and qualified to perform the Work consistent with the Contract Documents. Owner may reasonably object to Design-Builder's selection of any Subcontractor, provided that the Contract Price and/or Contract Time(s) shall be adjusted to the extent that Owner's decision impacts Design-Builder's cost and/or time of performance.

**2.7.4**  Design-Builder assumes responsibility to Owner for the proper performance of the Work of Subcontractors and any acts and omissions in connection with such performance. Nothing in the Contract Documents is intended or deemed to create any legal or contractual relationship between Owner and any Subcontractor or Sub-Subcontractor, including but not limited to any third-party beneficiary rights.

**2.7.5**  Design-Builder shall coordinate the activities of all Subcontractors. If Owner performs other work on the Project or at the Site with separate contractors under Owner's control, Design-Builder

DBIA Document No. 535 • Standard Form of General Conditions of Contract Between Owner and Design-Builder © 1998 Design-Build Institute of America

Page 3

EXHIBIT
PAGE 70 OF 74

Exhibit *1*
Page *33*

agrees to reasonably cooperate and coordinate its activities with those of such separate contractors so that the Project can be completed in an orderly and coordinated manner without unreasonable disruption.

**2.7.6** Design-Builder shall keep the Site reasonably free from debris, trash and construction wastes to permit Design-Builder to perform its construction services efficiently, safely and without interfering with the use of adjacent land areas. Upon Substantial Completion of the Work, or a portion of the Work, Design-Builder shall remove all debris, trash, construction wastes, materials, equipment, machinery and tools arising from the Work or applicable portions thereof to permit Owner to occupy the Project or a portion of the Project for its intended use.

**2.8    Design-Builder's Responsibility for Project Safety**

**2.8.1** Design-Builder recognizes the importance of performing the Work in a safe manner so as to prevent damage, injury or loss to (i) all individuals at the Site, whether working or visiting, (ii) the Work, including materials and equipment incorporated into the Work or stored on-Site or off-Site, and (iii) all other property at the Site or adjacent thereto. Design-Builder assumes responsibility for implementing and monitoring all safety precautions and programs related to the performance of the Work. Design-Builder shall, prior to commencing construction, designate a Safety Representative with the necessary qualifications and experience to supervise the implementation and monitoring of all safety precautions and programs related to the Work. Unless otherwise required by the Contract Documents, Design-Builder's Safety Representative shall be an individual stationed at the Site who may have responsibilities on the Project in addition to safety. The Safety Representative shall make routine daily inspections of the Site and shall hold weekly safety meetings with Design-Builder's personnel, Subcontractors and others as applicable.

**2.8.2** Design-Builder and Subcontractors shall comply with all Legal Requirements relating to safety, as well as any Owner-specific safety requirements set forth in the Contract Documents, provided that such Owner-specific requirements do not violate any applicable Legal Requirement. Design-Builder will immediately report in writing any safety-related injury, loss, damage or accident

arising from the Work to Owner's Representative and, to the extent mandated by Legal Requirements, to all government or quasi-government authorities having jurisdiction over safety-related matters involving the Project or the Work.

**2.8.3** Design-Builder's responsibility for safety under this Section 2.8 is not intended in any way to relieve Subcontractors and Sub-Subcontractors of their own contractual and legal obligations and responsibility for (i) complying with all Legal Requirements, including those related to health and safety matters, and (ii) taking all necessary measures to implement and monitor all safety precautions and programs to guard against injury, losses, damages or accidents resulting from their performance of the Work.

**2.9    Design-Builder's Warranty**

**2.9.1** Design-Builder warrants to Owner that the construction, including all materials and equipment furnished as part of the construction, shall be new unless otherwise specified in the Contract Documents, of good quality, in conformance with the Contract Documents and free of defects in materials and workmanship. Design-Builder's warranty obligation excludes defects caused by abuse, alterations, or failure to maintain the Work by persons other than Design-Builder or anyone for whose acts Design-Builder may be liable. Nothing in this warranty is intended to limit any manufacturer's warranty which provides Owner with greater warranty rights than set forth in this Section 2.9 or the Contract Documents. Design-Builder will provide Owner with all manufacturers' warranties upon Substantial Completion.

**2.10    Correction of Defective Work**

**2.10.1** Design-Builder agrees to correct any Work that is found to not be in conformance with the Contract Documents, including that part of the Work subject to Section 2.9 hereof, within a period of one year from the date of Substantial Completion of the Work or any portion of the Work, or within such longer period to the extent required by the Contract Documents.

**2.10.2** Design-Builder shall, within seven (7) days of receipt of written notice from Owner that the Work is not in conformance with the Contract Documents, take meaningful steps to commence correction of such nonconforming Work, including the correction

DBIA Document No. 535 • Standard Form of General Conditions of Contract Between Owner and Design-Builder

Exhibit /
Page 34

removal or replacement of the nonconforming Work and any damage caused to other parts of the Work affected by the nonconforming Work. If Design-Builder fails to commence the necessary steps within such seven (7) day period, Owner, in addition to any other remedies provided under the Contract Documents, may provide Design-Builder with written notice that Owner will commence correction of such nonconforming Work with its own forces. If Owner does not perform such corrective Work, Design-Builder shall be responsible for all reasonable costs incurred by Owner in performing such correction. If the nonconforming Work creates an emergency requiring an immediate response, the seven (7) day periods identified herein shall be deemed inapplicable.

**2.10.3** The one year period referenced in Section 2.10.1 above applies only to Design-Builder's obligation to correct nonconforming Work and is not intended to constitute a period of limitations for any other rights or remedies Owner may have regarding Design-Builder's other obligations under the Contract Documents.

## Article 3

## Owner's Services and Responsibilities

### 3.1 Duty to Cooperate

**3.1.1** Owner shall, throughout the performance of the Work, cooperate with Design-Builder and perform its responsibilities, obligations and services in a timely manner to facilitate Design-Builder's timely and efficient performance of the Work and so as not to delay or interfere with Design-Builder's performance of its obligations under the Contract Documents.

**3.1.2** Owner shall provide timely reviews and approvals of interim design submissions and Construction Documents consistent with the turnaround times set forth in Design-Builder's schedule.

### 3.2 Furnishing of Services and Information

**3.2.1** Unless expressly stated to the contrary in the Contract Documents, Owner shall provide, at its own cost and expense, for Design-Builder's information and use the following, all of which Design-Builder is entitled to rely upon in performing the Work:

.1 Surveys describing the property, boundaries, topography and reference points for use during construction, including existing service and utility lines;

.2 Geotechnical studies describing subsurface conditions, and other surveys describing other latent or concealed physical conditions at the Site;

.3 Temporary and permanent easements, zoning and other requirements and encumbrances affecting land use, or necessary to permit the proper design and construction of the Project and enable Design-Builder to perform the Work;

.4 A legal description of the Site;

.5 To the extent available, as-built and record drawings of any existing structures at the Site; and

.6 To the extent available, environmental studies, reports and impact statements describing the environmental conditions, including Hazardous Conditions, in existence at the Site.

**3.2.2** Owner is responsible for securing and executing all necessary agreements with adjacent land or property owners that are necessary to enable Design-Builder to perform the Work. Owner is further responsible for all costs, including attorneys' fees, incurred in securing these necessary agreements.

### 3.3 Financial Information

**3.3.1** At Design-Builder's request, Owner shall promptly furnish reasonable evidence satisfactory to Design-Builder that Owner has adequate funds available and committed to fulfill all of Owner's contractual obligations under the Contract Documents. If Owner fails to furnish such financial information in a timely manner, Design-Builder may stop Work under Section 11.3 hereof or exercise any other right permitted under the Contract Documents.

EXHIBIT
PAGE 26 OF 29

**3.3.2** Design-Builder shall cooperate with the reasonable requirements of Owner's lenders or other financial sources. Notwithstanding the preceding sentence, after execution of the Agreement Design-Builder shall have no obligation to execute for Owner or Owner's lenders or other financial sources any documents or agreements that require Design-Builder to assume obligations or responsibilities greater than those existing obligations Design-Builder has under the Contract Documents.

## 3.4    Owner's Representative

**3.4.1** Owner's Representative shall be responsible for providing Owner-supplied information and approvals in a timely manner to permit Design-Builder to fulfill its obligations under the Contract Documents. Owner's Representative shall also provide Design-Builder with prompt notice if it observes any failure on the part of Design-Builder to fulfill its contractual obligations, including any errors, omissions or defects in the performance of the Work.

## 3.5    Government Approvals and Permits

**3.5.1** Owner shall obtain and pay for all necessary permits, approvals, licenses, government charges and inspection fees set forth in the Owner's Permit List attached as an exhibit to the Agreement.

**3.5.2** Owner shall provide reasonable assistance to Design-Builder in obtaining those permits, approvals and licenses that are Design-Builder's responsibility.

## 3.6    Owner's Separate Contractors

**3.6.1** Owner is responsible for all work performed on the Project or at the Site by separate contractors under Owner's control. Owner shall contractually require its separate contractors to cooperate with, and coordinate their activities so as not to interfere with, Design-Builder in order to enable Design-Builder to timely complete the Work consistent with the Contract Documents.

## Article 4

## Hazardous Conditions and Differing Site Conditions

### 4.1    Hazardous Conditions

**4.1.1** Unless otherwise expressly provided in the Contract Documents to be part of the Work, Design-Builder is not responsible for any Hazardous Conditions encountered at the Site. Upon encountering any Hazardous Conditions, Design-Builder will stop Work immediately in the affected area and duly notify Owner and, if required by Legal Requirements, all government or quasi-government entities with jurisdiction over the Project or Site.

**4.1.2** Upon receiving notice of the presence of suspected Hazardous Conditions, Owner shall take the necessary measures required to ensure that the Hazardous Conditions are remediated or rendered harmless. Such necessary measures shall include Owner retaining qualified independent experts to (i) ascertain whether Hazardous Conditions have actually been encountered, and, if they have been encountered, (ii) prescribe the remedial measures that Owner must take either to remove the Hazardous Conditions or render the Hazardous Conditions harmless.

**4.1.3** Design-Builder shall be obligated to resume Work at the affected area of the Project only after Owner's expert provides it with written certification that (i) the Hazardous Conditions have been removed or rendered harmless and (ii) all necessary approvals have been obtained from all government and quasi-government entities having jurisdiction over the Project or Site.

**4.1.4** Design-Builder will be entitled, in accordance with these General Conditions of Contract, to an adjustment in its Contract Price and/or Contract Time(s) to the extent Design-Builder's cost and/or time of performance have been adversely impacted by the presence of Hazardous Conditions.

EXHIBIT |
PAGE 25 OF 37

DBIA Document No. 535 • Standard Form of General Conditions of Contract Between Owner and Design-Builder



Exhibit /
Page 36

**4.1.5** To the fullest extent permitted by law, Owner shall indemnify, defend and hold harmless Design-Builder, Design Consultants, Subcontractors, anyone employed directly or indirectly for any of them, and their officers, directors, employees and agents, from and against any and all claims, losses, damages, liabilities and expenses, including attorneys' fees and expenses, arising out of or resulting from the presence, removal or remediation of Hazardous Conditions at the Site.

**4.1.6** Notwithstanding the preceding provisions of this Section 4.1, Owner is not responsible for Hazardous Conditions introduced to the Site by Design-Builder, Subcontractors or anyone for whose acts they may be liable. Design-Builder shall indemnify, defend and hold harmless Owner and Owner's officers, directors, employees and agents from and against all claims, losses, damages, liabilities and expenses, including attorneys' fees and expenses, arising out of or resulting from those Hazardous Conditions introduced to the Site by Design-Builder, Subcontractors or anyone for whose acts they may be liable.

**4.2    Differing Site Conditions**

**4.2.1** Concealed or latent physical conditions or subsurface conditions at the Site that (i) materially differ from the conditions indicated in the Contract Documents or (ii) are of an unusual nature, differing materially from the conditions ordinarily encountered and generally recognized as inherent in the Work are collectively referred to herein as "Differing Site Conditions." If Design-Builder encounters a Differing Site Condition, Design-Builder will be entitled to an adjustment in the Contract Price and/or Contract Time(s) to the extent Design-Builder's cost and/or time of performance are adversely impacted by the Differing Site Condition.

**4.2.2** Upon encountering a Differing Site Condition, Design-Builder shall provide prompt written notice to Owner of such condition, which notice shall not be later than fourteen (14) days after such condition has been encountered. Design-Builder shall, to the extent reasonably possible, provide such notice before the Differing Site Condition has been substantially disturbed or altered.

## Article 5
## Insurance and Bonds

**5.1    Design-Builder's Insurance Requirements**

**5.1.1** Design-Builder is responsible for procuring and maintaining from insurance companies authorized to do business in the state in which the Project is located, and with a minimum rating set forth in the Agreement, the following insurance coverages for certain claims which may arise from or out of the performance of the Work and obligations under the Contract Documents:

  .1   Coverage for claims arising under workers' compensation, disability and other similar employee benefit laws applicable to the Work;

  .2   Coverage for claims by Design-Builder's employees for bodily injury, sickness, disease, or death;

  .3   Coverage for claims by any person other than Design-Builder's employees for bodily injury, sickness, disease, or death;

  .4   Coverage for usual personal injury liability claims for damages sustained by a person as a direct or indirect result of Design-Builder's employment of the person, or sustained by any other person;

  .5   Coverage for claims for damages (other than to the Work) because of injury to or destruction of tangible property, including loss of use;

  .6   Coverage for claims of damages because of personal injury or death, or property damage resulting from ownership, use and maintenance of any motor vehicle; and

  .7   Coverage for contractual liability claims arising out of Design-Builder's obligations under Section 7.4.1 hereof.

EXHIBIT 1
PAGE 2 6 OF 30

Exhibit 1
Page 37

**5.1.2** Design-Builder's liability insurance required by Section 5.1.1 above shall be written for the coverage amounts set forth in the Agreement and shall include completed operations insurance for the period of time set forth in the Agreement.

**5.1.3** Design-Builder's liability insurance set forth in Sections 5.1.1.1 through 5.1.1.7 above shall specifically delete any design-build or similar exclusions that could compromise coverages because of the design-build delivery of the Project.

**5.1.4** To the extent Owner requires Design-Builder or any Design Consultant to provide professional liability insurance for claims arising from the negligent performance of design services by Design-Builder or the Design Consultant, the coverage limits, duration and other specifics of such insurance shall be as set forth in the Agreement. Any professional liability shall specifically delete any design-build or similar exclusions that could compromise coverages because of the design-build delivery of the Project. Such policies shall be provided prior to the commencement of any design services hereunder.

**5.1.5** Prior to commencing any construction services hereunder, Design-Builder shall provide Owner with certificates evidencing that (i) all insurance obligations required by the Contract Documents are in full force and in effect and will remain in effect for the duration required by the Contract Documents and (ii) no insurance coverage will be canceled, renewal refused, or materially changed unless at least thirty (30) days prior written notice is given to Owner.

### 5.2   Owner's Liability Insurance

**5.2.1** Owner shall procure and maintain from insurance companies authorized to do business in the state in which the Project is located such liability insurance to protect Owner from claims which may arise from the performance of Owner's obligations under the Contract Documents or Owner's conduct during the course of the Project.

### 5.3   Owner's Property Insurance

**5.3.1** Unless otherwise provided in the Contract Documents, Owner shall procure and maintain from insurance companies authorized to do business in the state in which the Project is located property insurance upon the entire Project to the full

insurable value of the Project, including professional fees, overtime premiums and all other expenses incurred to replace or repair the insured property. The property insurance obtained by Owner shall include as additional insureds the interests of Owner, Design-Builder, Design Consultants, Subcontractors and Sub-Subcontractors, and shall insure against the perils of fire and extended coverage, theft, vandalism, malicious mischief, collapse, flood, earthquake, debris removal and other perils or causes of loss as called for in the Contract Documents. The property insurance shall include physical loss or damage to the Work, including materials and equipment in transit, at the Site or at another location as may be indicated in Design-Builder's Application for Payment and approved by Owner.

**5.3.2** Unless the Contract Documents provide otherwise, Owner shall procure and maintain boiler and machinery insurance that will include the interests of Owner, Design-Builder, Design Consultants, Subcontractors and Sub-Subcontractors.

**5.3.3** Prior to Design-Builder commencing any Work, Owner shall provide Design-Builder with certificates evidencing that (i) all Owner's insurance obligations required by the Contract Documents are in full force and in effect and will remain in effect until Design-Builder has completed all of the Work and has received final payment from Owner and (ii) no insurance coverage will be canceled, renewal refused, or materially changed unless at least thirty (30) days prior written notice is given to Design-Builder. Owner's property insurance shall not lapse or be canceled if Owner occupies a portion of the Work pursuant to Section 6.6.3 hereof. Owner shall provide Design-Builder with the necessary endorsements from the insurance company prior to occupying a portion of the Work.

**5.3.4** Any loss covered under Owner's property insurance shall be adjusted with Owner and Design-Builder and made payable to both of them as trustees for the insureds as their interests may appear, subject to any applicable mortgage clause. All insurance proceeds received as a result of any loss will be placed in a separate account and distributed in accordance with such agreement as the interested parties may reach. Any disagreement concerning the distribution of any proceeds will be resolved in accordance with Article 10 hereof.

EXHIBIT
PAGE 20 OF 57

**5.3.5**    Owner and Design-Builder waive against each other and Owner's separate contractors, Design Consultants, Subcontractors, agents and employees of each and all of them, all damages covered by property insurance provided herein, except such rights as they may have to the proceeds of such insurance.  Design-Builder and Owner shall, where appropriate, require similar waivers of subrogation from Owner's separate contractors, Design Consultants and Subcontractors and shall require each of them to include similar waivers in their contracts.

## 5.4    Bonds and Other Performance Security

**5.4.1**    If Owner requires Design-Builder to obtain performance and labor and material payment bonds, or other forms of performance security, the amount, form and other conditions of such security shall be as set forth in the Agreement.

## Article 6

## Payment

## 6.1    Schedule of Values

**6.1.1**    Within ten (10) days of execution of the Agreement, Design-Builder shall submit for Owner's review and approval a schedule of values for all of the Work.  The Schedule of Values will (i) subdivide the Work into its respective parts, (ii) include values for all items comprising the Work and (iii) serve as the basis for monthly progress payments made to Design-Builder throughout the Work.

## 6.2    Monthly Progress Payments

**6.2.1**    On or before the date established in the Agreement, Design-Builder shall submit for Owner's review and approval its Application for Payment requesting payment for all Work performed as of the date of the Application for Payment.  The Application for Payment shall be accompanied by all supporting documentation required by the Contract Documents and/or established at the meeting required by Section 2.1.4 hereof.

**6.2.2**    The Application for Payment may request payment for equipment and materials not yet incorporated into the Project, provided that (i) Owner is satisfied that the equipment and materials are

suitably stored at either the Site or another acceptable location, (ii) the equipment and materials are protected by suitable insurance and (iii) upon payment, Owner will receive the equipment and materials free and clear of all liens and encumbrances.

**6.2.3**    The Application for Payment shall constitute Design-Builder's representation that the Work has been performed consistent with the Contract Documents, has progressed to the point indicated in the Application for Payment, and that title to all Work will pass to Owner free and clear of all claims, liens, encumbrances, and security interests upon the incorporation of the Work into the Project, or upon Design-Builder's receipt of payment, whichever occurs earlier.

## 6.3    Withholding of Payments

**6.3.1**    On or before the date established in the Agreement, Owner shall pay Design-Builder all amounts properly due. If Owner determines that Design-Builder is not entitled to all or part of an Application for Payment, it will notify Design-Builder in writing at least five (5) days prior to the date payment is due.  The notice shall indicate the specific amounts Owner intends to withhold, the reasons and contractual basis for the withholding, and the specific measures Design-Builder must take to rectify Owner's concerns.  Design-Builder and Owner will attempt to resolve Owner's concerns prior to the date payment is due.   If the parties cannot resolve such concerns, Design-Builder may pursue its rights under the Contract Documents, including those under Article 10 hereof.

**6.3.2**    Notwithstanding anything to the contrary in the Contract Documents, Owner shall pay Design-Builder all undisputed amounts in an Application for Payment within the times required by the Agreement.

## 6.4    Right to Stop Work and Interest

**6.4.1**    If Owner fails to pay Design-Builder any amount that becomes due, Design-Builder, in addition to all other remedies provided in the Contract Documents, may stop Work pursuant to Section 11.3 hereof.  All payments due and unpaid shall bear interest at the rate set forth in the Agreement.

EXHIBIT ___
PAGE _50_ OF _91_

DBIA Document No. 535 • Standard Form of General Conditions
of Contract Between Owner and Design-Builder.
© 1998 Design-Build Institute of America

Page 9

Exhibit _1_
Page _39_

## 6.5 Design-Builder's Payment Obligations

**6.5.1** Design-Builder will pay Design Consultants and Subcontractors, in accordance with its contractual obligations to such parties, all the amounts Design-Builder has received from Owner on account of their work. Design-Builder will impose similar requirements on Design Consultants and Subcontractors to pay those parties with whom they have contracted. Design-Builder will indemnify and defend Owner against any claims for payment and mechanic's liens as set forth in Section 7.3 hereof.

## 6.6 Substantial Completion

**6.6.1** Design-Builder shall notify Owner when it believes the Work, or to the extent permitted in the Contract Documents, a portion of the Work, is substantially complete. Within five (5) days of Owner's receipt of Design-Builder's notice, Owner and Design-Builder will jointly inspect such Work to verify that it is substantially complete in accordance with the requirements of the Contract Documents. If such Work is substantially complete, Owner shall prepare and issue a Certificate of Substantial Completion that will set forth (i) the date of Substantial Completion of the Work or portion thereof, (ii) the remaining items of Work that have to be completed before final payment, (iii) provisions (to the extent not already provided in the Contract Documents) establishing Owner's and Design-Builder's responsibility for the Project's security, maintenance, utilities and insurance pending final payment and (iv) an acknowledgment that warranties commence to run on the date of Substantial Completion, except as may otherwise be noted in the Certificate of Substantial Completion.

**6.6.2** Upon Substantial Completion of the entire Work or, if applicable, any portion of the Work, Owner shall release to Design-Builder all retained amounts relating, as applicable, to the entire Work or completed portion of the Work, less an amount equal to the reasonable value of all remaining or incomplete items of Work as noted in the Certificate of Substantial Completion.

**6.6.3** Owner, at its option, may use a portion of the Work which has been determined to be substantially complete, provided, however, that (i) a Certificate of Substantial Completion has been issued for the portion of Work addressing the items set forth in Section 6.6.1 above, (ii) Design-Builder and Owner have obtained the consent of their sureties and insurers, and to the extent applicable, the appropriate government authorities having jurisdiction over the Project, and (iii) Owner and Design-Builder agree that Owner's use or occupancy will not interfere with Design-Builder's completion of the remaining Work.

## 6.7 Final Payment

**6.7.1** After receipt of a Final Application for Payment from Design-Builder, Owner shall make final payment by the time required in the Agreement, provided that Design-Builder has completed all of the Work in conformance with the Contract Documents.

**6.7.2** At the time of submission of its Final Application for Payment, Design-Builder shall provide the following information:

    .1 an affidavit that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, material, equipment, taxes or other items performed, furnished or incurred for or in connection with the Work which will in any way affect Owner's interests;

    .2 a general release executed by Design-Builder waiving, upon receipt of final payment by Design-Builder, all claims, except those claims previously made in writing to Owner and remaining unsettled at the time of final payment;

    .3 consent of Design-Builder's surety, if any, to final payment;

    .4 all operating manuals, warranties and other deliverables required by the Contract Documents; and

    .5 certificates of insurance confirming that required coverages will remain in effect consistent with the requirements of the Contract Documents.

**6.7.3** Upon making final payment, Owner waives all claims against Design-Builder except claims relating to (i) Design-Builder's failure to satisfy its payment obligations, if such failure affects Owner's interests, (ii) Design-Builder's failure to complete the Work consistent with the Contract Documents, including defects appearing after Substantial

Exhibit /

Page 4D

Completion and (iii) the terms of any special warranties required by the Contract Documents.

# Article 7

## Indemnification

### 7.1   Patent and Copyright Infringement

**7.1.1**   Design-Builder shall defend any action or proceeding brought against Owner based on any claim that the Work, or any part thereof, or the operation or use of the Work or any part thereof, constitutes infringement of any United States patent or copyright, now or hereafter issued. Owner shall give prompt written notice to Design-Builder of any such action or proceeding and will reasonably provide authority, information and assistance in the defense of same. Design-Builder shall indemnify and hold harmless Owner from and against all damages and costs, including but not limited to attorneys' fees and expenses awarded against Owner or Design-Builder in any such action or proceeding. Design-Builder agrees to keep Owner informed of all developments in the defense of such actions.

**7.1.2**   If Owner is enjoined from the operation or use of the Work, or any part thereof, as the result of any patent or copyright suit, claim, or proceeding, Design-Builder shall at its sole expense take reasonable steps to procure the right to operate or use the Work. If Design-Builder cannot so procure such right within a reasonable time, Design-Builder shall promptly, at Design-Builder's option and at Design-Builder's expense, (i) modify the Work so as to avoid infringement of any such patent or copyright or (ii) replace said Work with Work that does not infringe or violate any such patent or copyright.

**7.1.3**   Sections 7.1.1 and 7.1.2 above shall not be applicable to any suit, claim or proceeding based on infringement or violation of a patent or copyright (i) relating solely to a particular process or product of a particular manufacturer specified by Owner and not offered or recommended by Design-Builder to Owner or (ii) arising from modifications to the Work by Owner or its agents after acceptance of the Work. If the suit, claim or proceeding is based upon events set forth in the preceding sentence, Owner shall defend, indemnify and hold harmless Design-Builder to the same extent Design-Builder is obligated to defend, indemnify and hold harmless Owner in Section 7.1.1 above.

**7.1.4**   The obligations set forth in this Section 7.1 shall constitute the sole agreement between the parties relating to liability for infringement of violation of any patent or copyright.

### 7.2   Tax Claim Indemnification

**7.2.1**   If, in accordance with Owner's direction, an exemption for all or part of the Work is claimed for taxes, Owner shall indemnify, defend and hold harmless Design-Builder from and against any liability, penalty, interest, fine, tax assessment, attorneys' fees or other expenses or costs incurred by Design-Builder as a result of any action taken by Design-Builder in accordance with Owner's directive.

### 7.3   Payment Claim Indemnification

**7.3.1**   Providing that Owner is not in breach of its contractual obligation to make payments to Design-Builder for the Work, Design-Builder shall indemnify, defend and hold harmless Owner from any claims or mechanic's liens brought against Owner or against the Project as a result of the failure of Design-Builder, or those for whose acts it is responsible, to pay for any services, materials, labor, equipment, taxes or other items or obligations furnished or incurred for or in connection with the Work. Within three (3) days of receiving written notice from Owner that such a claim or mechanic's lien has been filed, Design-Builder shall commence to take the steps necessary to discharge said claim or lien, including, if necessary, the furnishing of a mechanic's lien bond. If Design-Builder fails to do so, Owner will have the right to discharge the claim or lien and hold Design-Builder liable for costs and expenses incurred, including attorneys' fees.

### 7.4   Design-Builder's General Indemnification

**7.4.1**   Design-Builder, to the fullest extent permitted by law, shall indemnify, hold harmless and defend Owner, its officers, directors, employees and agents from and against claims, losses, damages, liabilities, including attorneys' fees and expenses, for bodily injury, sickness or death, and property damage or destruction (other than to the Work itself) to the extent resulting from the negligent acts or omissions of Design-Builder, Design Consultants, Subcontractors, anyone employed directly or indirectly by any of them or anyone for whose acts any of them may be liable.

DBIA Document No. 535 • Standard Form of General Conditions
of Contract Between Owner and Design-Builder
© 1998 Design-Build Institute of America                    Page 11

EXHIBIT
PAGE ___ OF ___

Exhibit /
Page 41

**7.4.2** If an employee of Design-Builder, Design Consultants, Subcontractors, anyone employed directly or indirectly by any of them or anyone for whose acts any of them may be liable has a claim against Owner, its officers, directors, employees, or agents, Design-Builder's indemnity obligation set forth in Section 7.4.1 above shall not be limited by any limitation on the amount of damages, compensation or benefits payable by or for Design-Builder, Design Consultants, Subcontractors, or other entity under any employee benefit acts, including workers' compensation or disability acts.

**7.5    Owner's General Indemnification**

**7.5.1** Owner, to the fullest extent permitted by law, shall indemnify, hold harmless and defend Design-Builder and any of Design-Builder's officers, directors, employees, or agents from and against claims, losses, damages, liabilities, including attorneys' fees and expenses, for bodily injury, sickness or death, and property damage or destruction (other than to the Work itself) to the extent resulting from the negligent acts or omissions of Owner's separate contractors or anyone for whose acts any of them may be liable.

## Article 8

## Time

**8.1    Obligation to Achieve the Contract Times**

**8.1.1** Design-Builder agrees that it will commence performance of the Work and achieve the Contract Time(s) in accordance with Article 5 of the Agreement.

**8.2    Delays to the Work**

**8.2.1** If Design-Builder is delayed in the performance of the Work due to acts, omissions, conditions, events, or circumstances beyond its control and due to no fault of its own or those for whom Design-Builder is responsible, the Contract Time(s) for performance shall be reasonably extended by Change Order. By way of example, events that will entitle Design-Builder to an extension of the Contract Time(s) include acts or omissions of Owner or anyone under Owner's control (including separate contractors), changes in the Work, Differing Site Conditions, Hazardous Conditions, wars, floods, labor disputes, unusual

delay in transportation, epidemics abroad, earthquakes, adverse weather conditions not reasonably anticipated, and other acts of God.

**8.2.2** In addition to Design-Builder's right to a time extension for those events set forth in Section 8.2.1 above, Design-Builder shall also be entitled to an appropriate adjustment of the Contract Price provided, however, that the Contract Price shall not be adjusted for those events set forth in Section 8.2.1 above that are beyond the control of both Design-Builder and Owner, including the events of war, floods, labor disputes, earthquakes, epidemics, adverse weather conditions not reasonably anticipated, and other acts of God.

## Article 9

## Changes to the Contract Price and Time

**9.1    Change Orders**

**9.1.1** A Change Order is a written instrument issued after execution of the Agreement signed by Owner and Design-Builder, stating their agreement upon all of the following:

    .1    The scope of the change in the Work;

    .2    The amount of the adjustment to the Contract Price; and

    .3    The extent of the adjustment to the Contract Time(s).

**9.1.2** All changes in the Work authorized by applicable Change Order shall be performed under the applicable conditions of the Contract Documents. Owner and Design-Builder shall negotiate in good faith and as expeditiously as possible the appropriate adjustments for such changes.

**9.1.3** If Owner requests a proposal for a change in the Work from Design-Builder and subsequently elects not to proceed with the change, a Change Order shall be issued to reimburse Design-Builder for reasonable costs incurred for estimating services, design services and services involved in the preparation of proposed revisions to the Contract Documents. EXHIBIT
PAGE __ OF __

Exhibit /
Page 4

## 9.2 Work Change Directives

**9.2.1** A Work Change Directive is a written order prepared and signed by Owner, directing a change in the Work prior to agreement on an adjustment in the Contract Price and/or the Contract Time(s):

**9.2.2** Owner and Design-Builder shall negotiate in good faith and as expeditiously as possible the appropriate adjustments for the Work Change Directive. Upon reaching an agreement, the parties shall prepare and execute an appropriate Change Order reflecting the terms of the agreement.

## 9.3 Minor Changes in the Work

**9.3.1** Minor changes in the Work do not involve an adjustment in the Contract Price and/or Contract Time(s) and do not materially and adversely affect the Work, including the design, quality, performance and workmanship required by the Contract Documents. Design-Builder may make minor changes in the Work consistent with the intent of the Contract Documents, provided, however that Design-Builder shall promptly inform Owner, in writing, of any such changes and record such changes on the documents maintained by Design-Builder.

## 9.4 Contract Price Adjustments

**9.4.1** The increase or decrease in Contract Price resulting from a change in the Work shall be determined by one or more of the following methods:

    .1    Unit prices set forth in the Agreement or as subsequently agreed to between the parties;

    .2    A mutually accepted, lump sum, properly itemized and supported by sufficient substantiating data to permit evaluation by Owner;

    .3    Costs, fees and any other markups set forth in the Agreement; and

    .4    If an increase or decrease cannot be agreed to as set forth in items .1 through .3 above and Owner issues a Work Change Directive, the cost of the change of the Work shall be determined by the reasonable expense

and savings in the performance of the Work resulting from the change, including a reasonable overhead and profit, as may be set forth in the Agreement. If the net result of both additions and deletions to the Work is an increase in the Contract Price, overhead and profit shall be calculated on the basis of the net increase to the Contract Price. If the net result of both additions and deletions to the Work is a decrease in the Contract Price, there shall be no overhead or profit adjustment to the Contract Price. Design-Builder shall maintain a documented, itemized accounting evidencing the expenses and savings associated with such changes.

**9.4.2** If unit prices are set forth in the Contract Documents or are subsequently agreed to by the parties, but application of such unit prices will cause substantial inequity to Owner or Design-Builder because of differences in the character or quantity of such unit items as originally contemplated, such unit prices shall be equitably adjusted.

**9.4.3** If Owner and Design-Builder disagree upon whether Design-Builder is entitled to be paid for any services required by Owner, or if there are any other disagreements over the scope of Work or proposed changes to the Work, Owner and Design-Builder shall resolve the disagreement pursuant to Article 10 hereof. As part of the negotiation process, Design-Builder shall furnish Owner with a good faith estimate of the costs to perform the disputed services in accordance with Owner's interpretations. If the parties are unable to agree and Owner expects Design-Builder to perform the services in accordance with Owner's interpretations, Design-Builder shall proceed to perform the disputed services, conditioned upon Owner issuing a written order to Design-Builder (i) directing Design-Builder to proceed and (ii) specifying Owner's interpretation of the services that are to be performed. If this occurs, Design-Builder shall be entitled to submit in its Applications for Payment an amount equal to fifty percent (50%) of its reasonable estimated direct cost to perform the services, and Owner agrees to pay such amounts, with the express understanding that (i) such payment by Owner does not prejudice Owner's right to argue that it has no responsibility to pay for such services and (ii) receipt of such payment by Design-Builder does not prejudice

EXHIBIT
PAGE _42_ OF _57_

Exhibit _1_
Page _43_

Design-Builder's right to seek full payment of the disputed services if Owner's order is deemed to be a change to the Work.

## 9.5   Emergencies

**9.5.1**   In any emergency affecting the safety of persons and/or property, Design-Builder shall act, at its discretion, to prevent threatened damage, injury or loss. Any change in the Contract Price and/or Contract Time(s) on account of emergency work shall be determined as provided in this Article 9.

## Article 10

## Contract Adjustments and Disputes

### 10.1   Requests for Contract Adjustments and Relief

**10.1.1**   If either Design-Builder or Owner believes that it is entitled to relief against the other for any event arising out of or related to the Work or Project, such party shall provide written notice to the other party of the basis for its claim for relief. Such notice shall, if possible, be made prior to incurring any cost or expense and in accordance with any specific notice requirements contained in applicable sections of these General Conditions of Contract. In the absence of any specific notice requirement, written notice shall be given within a reasonable time, not to exceed twenty-one (21) days, after the occurrence giving rise to the claim for relief or after the claiming party reasonably should have recognized the event or condition giving rise to the request, whichever is later. Such notice shall include sufficient information to advise the other party of the circumstances giving rise to the claim for relief, the specific contractual adjustment or relief requested and the basis of such request.

### 10.2   Dispute Avoidance and Resolution

**10.2.1**   The parties are fully committed to working with each other throughout the Project and agree to communicate regularly with each other at all times so as to avoid or minimize disputes or disagreements. If disputes or disagreements do arise, Design-Builder and Owner each commit to resolving such disputes or disagreements in an amicable, professional and expeditious manner so as to avoid unnecessary losses, delays and disruptions to the Work.

**10.2.2**   Design-Builder and Owner will first attempt to resolve disputes or disagreements at the field level through discussions between Design-Builder's Representative and Owner's Representative.

**10.2.3**   If a dispute or disagreement cannot be resolved through Design-Builder's Representative and Owner's Representative, Design-Builder's Senior Representative and Owner's Senior Representative, upon the request of either party, shall meet as soon as conveniently possible, but in no case later than thirty (30) days after such a request is made, to attempt to resolve such dispute or disagreement. Prior to any meetings between the Senior Representatives, the parties will exchange relevant information that will assist the parties in resolving their dispute or disagreement.

**10.2.4**   If after meeting the Senior Representatives determine that the dispute or disagreement cannot be resolved on terms satisfactory to both parties, the parties shall submit the dispute or disagreement to non-binding mediation. The mediation shall be conducted by a mutually agreeable impartial mediator, or if the parties cannot so agree, a mediator designated by the American Arbitration Association ("AAA") pursuant to its Construction Industry Mediation Rules. The mediation will be governed by and conducted pursuant to a mediation agreement negotiated by the parties or, if the parties cannot so agree, by procedures established by the mediator.

### 10.3   Arbitration

**10.3.1**   Any claims, disputes or controversies between the parties arising out of or relating to the Agreement, or the breach thereof, which have not been resolved in accordance with the procedures set forth in Section 10.2 above shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the AAA then in effect, unless the parties mutually agree otherwise.

**10.3.2**   The award of the arbitrator(s) shall be final and binding upon the parties without the right of appeal to the courts. Judgment may be entered upon it in accordance with applicable law by any court having jurisdiction thereof.

**10.3.3**   Design-Builder and Owner expressly agree that any arbitration pursuant to this Section 10.3 may be joined or consolidated with any arbitration

EXHIBIT ____
PAGE ____ OF ____

Exhibit /

Page 44

involving any other person or entity (i) necessary to resolve the claim, dispute or controversy, or (ii) substantially involved in or affected by such claim, dispute or controversy. Both Design-Builder and Owner will include appropriate provisions in all contracts they execute with other parties in connection with the Project to require such joinder or consolidation.

**10.3.4** The prevailing party in any arbitration, or any other final, binding dispute proceeding upon which the parties may agree, shall be entitled to recover from the other party reasonable attorneys' fees and expenses incurred by the prevailing party.

**10.4    Duty to Continue Performance**

**10.4.1** Unless provided to the contrary in the Contract Documents, Design-Builder shall continue to perform the Work and Owner shall continue to satisfy its payment obligations to Design-Builder, pending the final resolution of any dispute or disagreement between Design-Builder and Owner.

**10.5    CONSEQUENTIAL DAMAGES**

**10.5.1** NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY (EXCEPT AS SET FORTH IN SECTION 10.5.2 BELOW), NEITHER DESIGN-BUILDER NOR OWNER SHALL BE LIABLE TO THE OTHER FOR ANY CONSEQUENTIAL LOSSES OR DAMAGES, WHETHER ARISING IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO LOSSES OF USE, PROFITS, BUSINESS, REPUTATION OR FINANCING.

**10.5.2** The consequential damages limitation set forth in Section 10.5.1 above is not intended to affect the payment of liquidated damages, if any, set forth in Article 5 of the Agreement, which both parties recognize has been established, in part, to reimburse Owner for some damages that might otherwise be deemed to be consequential.

## Article 11

## Stop Work and Termination for Cause

**11.1    Owner's Right to Stop Work**

**11.1.1** Owner may, without cause and for its convenience, order Design-Builder in writing to stop

and suspend the Work. Such suspension shall not exceed sixty (60) consecutive days or aggregate more than ninety (90) days during the duration of the Project.

**11.1.2** Design-Builder is entitled to seek an adjustment of the Contract Price and/or Contract Time(s) if its cost or time to perform the Work has been adversely impacted by any suspension of stoppage of work by Owner.

**11.2    Owner's Right to Perform and Terminate for Cause**

**11.2.1** If Design-Builder persistently fails to (i) provide a sufficient number of skilled workers, (ii) supply the materials required by the Contract Documents, (iii) comply with applicable Legal Requirements, (iv) timely pay, without cause, Design Consultants or Subcontractors, (v) prosecute the Work with promptness and diligence to ensure that the Work is completed by the Contract Time(s), as such times may be adjusted, or (vi) perform material obligations under the Contract Documents, then Owner, in addition to any other rights and remedies provided in the Contract Documents or by law, shall have the rights set forth in Sections 11.2.2 and 11.2.3 below.

**11.2.2** Upon the occurrence of an event set forth in Section 11.2.1 above, Owner may provide written notice to Design-Builder that it intends to terminate the Agreement unless the problem cited is cured, or commenced to be cured, within seven (7) days of Design-Builder's receipt of such notice. If Design-Builder fails to cure, or reasonably commence to cure, such problem, then Owner may give a second written notice to Design-Builder of its intent to terminate within an additional seven (7) day period. If Design-Builder, within such second seven (7) day period, fails to cure, or reasonably commence to cure, such problem, then Owner may declare the Agreement terminated for default by providing written notice to Design-Builder of such declaration.

**11.2.3** Upon declaring the Agreement terminated pursuant to Section 11.2.2 above, Owner may enter upon the premises and take possession, for the purpose of completing the Work, of all materials, equipment, scaffolds, tools, appliances and other items thereon, which have been purchased or provided for the performance of the Work, all of which Design-Builder hereby transfers, assigns and sets over to Owner for such purpose, and to employ

DBIA Document No. 535 • Standard Form of General Conditions
of Contract Between Owner and Design-Builder
© 1998 Design-Build Institute of America

Page 15

EXHIBIT ___
PAGE ___ OF ___

Exhibit /
Page 45

any person or persons to complete the Work and provide all of the required labor, services, materials, equipment and other items. In the event of such termination, Design-Builder shall not be entitled to receive any further payments under the Contract Documents until the Work shall be finally completed in accordance with the Contract Documents. At such time, if the unpaid balance of the Contract Price exceeds the cost and expense incurred by Owner in completing the Work, such excess shall be paid by Owner to Design-Builder. Notwithstanding the preceding sentence, if the Agreement establishes a Guaranteed Maximum Price, Design-Builder will only be entitled to be paid for Work performed prior to its default. If Owner's cost and expense of completing the Work exceeds the unpaid balance of the Contract Price, then Design-Builder shall be obligated to pay the difference to Owner. Such costs and expense shall include not only the cost of completing the Work, but also losses, damages, costs and expense, including attorneys' fees and expenses, incurred by Owner in connection with the reprocurement and defense of claims arising from Design-Builder's default, subject to the waiver of consequential damages set forth in Section 10.5 hereof.

**11.2.4**  If Owner improperly terminates the Agreement for cause, the termination for cause will be converted to a termination for convenience in accordance with the provisions of Article 8 of the Agreement.

### 11.3    Design-Builder's Right to Stop Work

**11.3.1**  Design-Builder may, in addition to any other rights afforded under the Contract Documents or at law, stop work for the following reasons:

> .1    Owner's failure to provide financial assurances as required under Section 3.3 hereof; or
>
> .2    Owner's failure to pay amounts properly due under Design-Builder's Application for Payment.

**11.3.2**  Should any of the events set forth in Section 11.3.1 above occur, Design-Builder has the right to provide Owner with written notice that Design-Builder will stop work unless said event is cured within seven (7) days from Owner's receipt of Design-Builder's notice. If Owner does not cure the problem within such seven (7) day period, Design-

Builder may stop work. In such case, Design-Builder shall be entitled to make a claim for adjustment to the Contract Price and Contract Time(s) to the extent it has been adversely impacted by such stoppage.

### 11.4    Design-Builder's Right to Terminate for Cause

**11.4.1**  Design-Builder, in addition to any other rights and remedies provided in the Contract Documents or by law, may terminate the Agreement for cause for the following reasons:

> .1    The Work has been stopped for sixty (60) consecutive days, or more than ninety (90) days during the duration of the Project, because of court order, any government authority having jurisdiction over the Work, or orders by Owner under Section 11.1.1 hereof, provided that such stoppages are not due to the acts or omissions of Design-Builder or anyone for whose acts Design-Builder may be responsible.
>
> .2    Owner's failure to provide Design-Builder with any information, permits or approvals that are Owner's responsibility under the Contract Documents which result in the Work being stopped for sixty (60) consecutive days, or more than ninety (90) days during the duration of the Project, even though Owner has not ordered Design-Builder in writing to stop and suspend the Work pursuant to Section 11.1.1 hereof.
>
> .3    Owner's failure to cure the problems set forth in Section 11.3.1 above after Design-Builder has stopped the Work.

**11.4.2**  Upon the occurrence of an event set forth in Section 11.4.1 above, Design-Builder may provide written notice to Owner that it intends to terminate the Agreement unless the problem cited is cured, or commenced to be cured, within seven (7) days of Owner's receipt of such notice. If Owner fails to cure, or reasonably commence to cure, such problem, then Design-Builder may give a second written notice to Owner of its intent to terminate within an additional seven (7) day period. If Owner, within such second seven (7) day period, fails to

DBIA Document No. 535  •  Standard Form of General Conditions of Contract Between Owner and Design-Builder
© 1998 Design-Build Institute of America

EXHIBIT 1
PAGE 46

cure, or reasonably commence to cure, such problem, then Design-Builder may declare the Agreement terminated for default by providing written notice to Owner of such declaration. In such case, Design-Builder shall be entitled to recover in the same manner as if Owner had terminated the Agreement for its convenience under Article 8 of the Agreement.

### 11.5 Bankruptcy of Owner or Design-Builder

**11.5.1** If either Owner or Design-Builder institutes or has instituted against it a case under the United States Bankruptcy Code (such party being referred to as the "Bankrupt Party"), such event may impair or frustrate the Bankrupt Party's ability to perform its obligations under the Contract Documents. Accordingly, should such event occur:

.1  The Bankrupt Party, its trustee or other successor, shall furnish, upon request of the non-Bankrupt Party, adequate assurance of the ability of the Bankrupt Party to perform all future material obligations under the Contract Documents, which assurances shall be provided within ten (10) days after receiving notice of the request; and

.2  The Bankrupt Party shall file an appropriate action within the bankruptcy court to seek assumption or rejection of the Agreement within sixty (60) days of the institution of the bankruptcy filing and shall diligently prosecute such action.

If the Bankrupt Party fails to comply with its foregoing obligations, the non-Bankrupt Party shall be entitled to request the bankruptcy court to reject the Agreement, declare the Agreement terminated and pursue any other recourse available to the non-Bankrupt Party under this Article 11.

**11.5.2** The rights and remedies under Section 11.5.1 above shall not be deemed to limit the ability of the non-Bankrupt Party to seek any other rights and remedies provided by the Contract Documents or by law, including its ability to seek relief from any automatic stays under the United States Bankruptcy Code or the right of Design-Builder to stop Work under any applicable provision of these General Conditions of Contract.

### Article 12
### Miscellaneous

### 12.1 Assignment

**12.1.1** Neither Design-Builder nor Owner shall, without the written consent of the other assign, transfer or sublet any portion or part of the Work or the obligations required by the Contract Documents.

### 12.2 Successorship

**12.2.1** Design-Builder and Owner intend that the provisions of the Contract Documents are binding upon the parties, their employees, agents, heirs, successors and assigns.

### 12.3 Governing Law

**12.3.1** The Agreement and all Contract Documents shall be governed by the laws of the place of the Project, without giving effect to its conflict of law principles.

### 12.4 Severability

**12.4.1** If any provision or any part of a provision of the Contract Documents shall be finally determined to be superseded, invalid, illegal, or otherwise unenforceable pursuant to any applicable Legal Requirements, such determination shall not impair or otherwise affect the validity, legality, or enforceability of the remaining provision or parts of the provision of the Contract Documents, which shall remain in full force and effect as if the unenforceable provision or part were deleted.

### 12.5 No Waiver

**12.5.1** The failure of either Design-Builder or Owner to insist, in any one or more instances, on the performance of any of the obligations required by the other under the Contract Documents shall not be construed as a waiver or relinquishment of such obligation or right with respect to future performance.

### 12.6 Headings

**12.6.1** The headings used in these General Conditions of Contract, or any other Contract Document, are for ease of reference only and shall

EXHIBIT ____
PAGE ____ OF ____

Exhibit ____
Page ____

not in any way be construed to limit or alter the meaning of any provision.

## 12.7    Notice

**12.7.1**  Whenever the Contract Documents require that notice be provided to the other party, notice will be deemed to have been validly given (i) if delivered in person to the individual intended to receive such notice, (ii) four (4) days after being sent by registered or certified mail, postage prepaid to the address indicated in the Agreement or (iii) if transmitted by facsimile, by the time stated in a machine generated confirmation that notice was received at the facsimile number of the intended recipient.

## 12.8    Amendments

**12.8.1**  The Contract Documents may not be changed, altered, or amended in any way except in writing signed by a duly authorized representative of each party.

EXHIBIT
PAGE ___ OF ___

DBIA Document No. 535  •  Standard Form of General Conditions
of Contract Between Owner and Design-Builder
© 1998 Design-Build Institute of America

Exhibit /
Page 48

NO PART OF ANY STEVENS-NESS FORM MAY BE REPRODUCED IN ANY FORM OR BY ANY ELECTRONIC OR MECHANICAL MEANS.

**CLAIM OF CONSTRUCTION LIEN**
ORIGINAL CONTRACTOR

R. E. Noah and Company Inc.
241 NE Ivan Street
Roseburg, OR 97470
_Lien Claimant's Name and Address_

_Owner's Name and Address_

After recording, return to: Name, Address, Zip:

STATE OF OREGON,
County of _____ } ss.

DOUGLAS COUNTY OFFICIAL RECORDS    2009-004691
BARBARA E. NIELSEN, COUNTY CLERK

$26.00

LIENS-LIENS  Cnt=1  Stn=3  SHERON
$15.00 $11.00    02/24/2009 03:54:50 PM

NAME _____  TITLE _____

By _____, Deputy.

KNOW ALL BY THESE PRESENTS that R.E. Noah and Company Inc.
hereinafter called claimant, did on December 11th, 2007 , enter into a contract for the performance of labor,
transporting or furnishing materials to be used in or renting equipment used in the construction of an improvement known as
BBGL Mini Storage / Armadillo Self Storage
The improvement is situated upon certain land in the County of Douglas , State of Oregon, which is the site
of the improvement, described as follows:

Parcel 1, land partition 2003-21, surveyor's records of Douglas County,
Oregon, recorders instrument No. 2003-7907. See attached map.

(IF SPACE INSUFFICIENT, CONTINUE DESCRIPTION ON REVERSE)

The address of the improvement is (if unknown, so state) 7845 Old Highway 99 North
Roseburg, OR 97470

The name of the owner or reputed owner of the land is BBGL Investments, LLC

The name of the owner or reputed owner of the improvement is BBGL Investments, LLC

The name of the person who employed claimant to furnish the labor, materials, and/or equipment, and to perform the con-
tract is James Garrison & Chris Littleton, & Jeff Borges

The person(s) just named, at all times herein mentioned, had knowledge of the construction.
Claimant commenced performance of the contract on 2/5/2008 , provided and furnished all
labor, materials and equipment required by the contract and actually used in the construction of the improvement, and fully com-
pleted the contract on _____, after which claimant ceased to provide labor, transport or furnish
materials and/or transport, furnish or rent equipment for the improvement.
The following is a true statement of claimant's demand after deducting all just credits and offsets, to-wit:

Contract price ........................................................... $ NA
This price includes materials and supplies in the amount of ................. $ _____
and the reasonable rental value of equipment which is ................. $ _____
If no contract price, the reasonable value of claimant's labor, materials and equipment is:

| | |
|---|---|
| Labor ..................................... | $ NA |
| Materials ................................. | $ NA |
| Equipment ................................. | $ NA |
| Other (specify) ........................... | $ 95,145.00 |
| Recording fees ............................ | $ 26.00 |
| Total ..................................... | $ 95,171.00 |
| Less all just credits and offsets ......... | ($ NA ) |
| Balance due claimant ...................... | $ 95,171.00 |

Note: If claimant is other than original, use S-N Form No. 1162, or the equivalent.
For the time and place of recording to make this lien a valid claim, see quotation from ORS 87.035 on next page.

(OVER)

EXHIBIT _____
PAGE ___ OF ___

Exhibit 1
Page 49



Claimant claims a lien for the amount last stated upon the improvement and upon the site, to-wit: the land upon which the improvement is constructed, together with the land that may be required for the convenient use and occupation of the improvement constructed on the site, to be determined by the court at the time of the foreclosure of this lien.*

In construing this instrument, the singular pronoun includes the plural, as the circumstances require.

Dated _2/24/09_____              R. E. Noah and Company INc._____
                                          _____  Claimant
                                          Russell F. Noah/President

STATE OF OREGON, County of __Douglas_____)ss.
    I, Russell F. Noah_____, being first duly sworn, depose
and say that: I am the President of R. E. Noah and Company, Inc._____
claimant named in the foregoing instrument. I have knowledge of the facts set forth therein. All statements made in this instrument are true and correct as I verily believe.

                                          _____
                                          Russell F. Noah
SIGNED AND SWORN TO before me on _____2-24-09_____

                                          Lani D Miller
OFFICIAL SEAL                             Notary Public for Oregon
LANI D MILLER                             My commission expires ___10-4-2012_____
NOTARY PUBLIC-OREGON
COMMISSION NO. 432637
MY COMMISSION EXPIRES OCT 4, 2012

ORS 87.005. "'Original Contractor' means a contractor who has a contractual relationship with the owner."
    The foregoing lien is created by subsection 1 of ORS 87.010. ORS 87.035 provides: "Every person claiming a lien created under ORS 87.010 (1) or (2) shall perfect the lien not later than 75 days after the person has ceased to provide labor, rent equipment or furnish materials or 75 days after completion of construction, whichever is earlier. Every other person claiming a lien under ORS 87.010 shall perfect the lien not later than 75 days after the completion of construction.* * *" ORS 87.035 also provides that the lien claim "shall be perfected by filing a claim of lien with the recording officer of the county or counties in which the improvement, or some part thereof, is situated."

                        _____

NOTICE TO THE OWNER of the land described in the foregoing copy of claim of lien:
    Please be advised that the original claim of lien, of which the foregoing is a true copy, was filed and recorded in the office of the recording officer of __Douglas_____ County, Oregon, on ___2/24/09_____.

                                          __R. E. Noah and Company, Inc._____
                                          _____  Claimant
                                          By _____
                                          Russell F. Noah / President

*See ORS 87.021 to determine whether a Notice of Lien need be furnished in accordance with the terms of that statute.

ORS 87.039 provides:
    "A person filing a claim of lien pursuant to ORS 87.035 shall mail to the owner and to the mortgagee a notice in writing that the claim has been filed. A copy of the claim of lien shall be attached to the notice. The notice shall be mailed not later than 20 days after the date of filing.* * *"

                        (DESCRIPTION CONTINUED)

EXHIBIT 2
PAGE 2 OF 2

Exhibit /
Page 50

NO  If claimant is other than original, use S-N-Form.                              or the equivalent.

**"SUPPLEMENTAL"**
**CLAIM OF CONSTRUCTION LIEN**
ORIGINAL CONTRACTOR

STATE OF OREGON,
County of _____ } ss.

R. E. Noah and Company Inc.
241 NE Ivan Street
Roseburg, OR 97470
_____
Lien Claimant's Name and Address

DOUGLAS COUNTY OFFICIAL RECORDS
BARBARA E. NIELSEN, COUNTY CLERK        2008-004131

$26.00

LIENS-LIENS Cnt=1 Stn=1      02/25/2008 02:04:48 PM
$15.00 $11.00              RECEIPTCOUNTER

...ent was

...orded in

...'reception

...y affixed.

Owner's Name and Address

After recording, return to Name, Address, Zip:
R. E. Noah and Company Inc.
241 NE Ivan Street
Roseburg, OR 97470

NAME                    TITLE

By _____, Deputy.

KNOW ALL BY THESE PRESENTS that R.E. Noah and Company, Inc. ,
hereinafter called claimant, did on January 3rd, 2008 , enter into a contract for the performance of labor,
transporting or furnishing materials to be used in or renting equipment used in the construction of an improvement known as
BBGL Mini Storage / Armadillo Self Storage
The improvement is situated upon certain land in the County of Douglas , State of Oregon, which is the site
of the improvement, described as follows:

Parcel 1, land partition 2003-21, surveyor's records of Douglas County,
Oregon, recorders instrument No. 2003-7907.  See attached map.

(IF SPACE INSUFFICIENT, CONTINUE DESCRIPTION ON REVERSE)

The _____ (list is (if unknown, so state) 7845 Old Highway 99 North
Roseburg, Oregon 97470
The name of the owner or reputed owner of the land is BBGL Investments, LLC
owner or ...
The name of the owner or reputed owner of the improvement is BBGL Investments, LLC

The name of the person who employed claimant to furnish the labor, materials, and/or equipment, and to perform the con-
tract is James Garrison & Chris Littleton & Jeff Borges
The person(s) just named, at all times herein mentioned, had knowledge of the construction.
Claimant commenced performance of the contract on 2/5/2008 , provided and furnished all
labor, materials and equipment required by the contract and actually used in the construction of the improvement, and fully com-
pleted the contract on 12/15/2008 , after which claimant ceased to provide labor, transport or furnish
materials and/or transport, furnish or rent equipment for the improvement.
The following is a true statement of claimant's demand after deducting all just credits and offsets, to-wit:
Contract price ..................................................................$ NA
This price includes materials and supplies in the amount of ............$_____
and the reasonable rental value of equipment which is .................$_____
If no contract price, the reasonable value of claimant's labor, materials and equipment is:
Labor .......................................................................$ NA
Materials ..................................................................$ NA
Equipment ..................................................................$ NA
Other (specify) ...........................................................$ NA
Recording fees .............................................................$ 95,145.00
Total ......................................................................$ 26.00
Less all just credits and offsets .........................................$ 95,171.00
Balance due claimant .......................................................$( NA )
                                                                            $ 95,171.00

EXHIBIT 3
PAGE 1 OF 7

For the time and place of recording to make this lien a valid claim, see quotation from ORS 87.035 on next page.
(OVER)

Exhibit 1
Page 51

Claimant claims a lien for the amount last stated upon the improvement and upon the site, to-wit: the land upon which the improvement is constructed, together with the land that may be required for the convenient use and occupation of the improvement constructed on the site, to be determined by the court at the time of the foreclosure of this lien.*

In construing this instrument, the singular pronoun includes the plural, as the circumstances require.

Dated __2/25/09_____          __R. E. Noah and Company Inc._____

_____ Claimant
Russell F. Noah/President

STATE OF OREGON, County of __Douglas_____ )ss.

I, __Russell F. Noah_____, being first duly sworn, depose and say: I am the __President of R.E. Noah and Company, Inc._____ claimant named in the foregoing instrument. I have knowledge of the facts set forth therein. All statements made in this instrument are true and correct as I verily believe.

_____
Russell F. Noah

Signed and sworn to before me on __2-25-2009_____

_____
Notary Public for Oregon
My commission expires __10-4-2012__

**OFFICIAL SEAL**
**LORI D MILLER**
**NOTARY PUBLIC-OREGON**
**COMMISSION NO. 432637**
**MY COMMISSION EXPIRES OCT 4, 2012**

ORS 87.005. "'Original Contractor' means a contractor who has a contractual relationship with the owner."

The foregoing lien is created by subsection 1 of ORS 87.010. ORS 87.035 provides: "Every person claiming a lien created under ORS 87.010 (1) or (2) shall perfect the lien not later than 75 days after the person has ceased to provide labor, rent equipment or furnish materials or 75 days after completion of construction, whichever is earlier. Every other person claiming a lien under ORS 87.010 shall perfect the lien not later than 75 days after the completion of construction." * * * ORS 87.035 also provides that the lien claim "shall be perfected by filing a claim of lien with the recording officer of the county or counties in which the improvement, or some part thereof, is situated."

NOTICE TO THE OWNER of the land described in the foregoing copy of claim of lien:

Please be advised that the original claim of lien, of which the foregoing is a true copy, was filed and recorded in the office of the recording officer of __Douglas_____ County, Oregon, on __2/25/09_____.

__R. E. Noah and Company, Inc._____
Claimant

By _____
Russell F. Noah / President

*See ORS 87.021 to determine whether a Notice of Lien need be furnished in accordance with the terms of that statute.

ORS 87.039 provides:

"A person filing a claim of lien pursuant to ORS 87.035 shall mail to the owner and to the mortgagee a notice in writing that the claim has been filed. A copy of the claim of lien shall be attached to the notice. The notice shall be mailed not later than 20 days after the date of filing." * * *

(DESCRIPTION CONTINUED)

EXHIBIT 3
PAGE 2 OF 2

Exhibit 1
Page 52

1

2

3

4          IN THE CIRCUIT COURT OF THE STATE OF OREGON

5               FOR THE COUNTY OF DOUGLAS

6  R. E. NOAH AND CO., an Oregon corporation,    | Case No. 09CV2641CC

7                    Plaintiff,                   | NOTICE OF INTENT TO TAKE
                                                  | DEFAULT AGAINST DEFENDANTS
8         v.                                      | BBGL INVESTMENTS LLC AND
                                                  | CHRISTOPHER LITTLETON
9  BBGL INVESTMENTS LLC, an Oregon limited
   liability company; SILVER FALLS BANK, an
10 Oregon banking institution; FEDERAL
   DEPOSIT INSURANCE CORPORATION; and
11 CHRISTOPHER LITTLETON, an individual,

12                    Defendants.

13 TO:   BBGL Investments LLC, Christopher Littleton, and their counsel of record, Louis
         Santiago.
14

15        PLEASE TAKE NOTICE that if defendants have not filed an answer or other responsive

16 pleading herein on or before September 3, 2009, the undersigned will make application to this

17 Court on September 4, 2009, for entry of an order of default and for default judgment in favor of

18 plaintiff and against defendants BBGL Investments LLC and Christopher Littleton, and each of

19 them, for the relief prayed for in plaintiff's Complaint.

20        Dated this _21 st_ day of August, 2009.

21                                         JORDAN SCHRADER RAMIS PC
                                           Attorneys for Plaintiff R. E. Noah and Co.
22

23                                         By: _____
                                               John J. Hickey, OSB # 063593
24                                             john.hickey@jordanschrader.com
                                               Fax No. (503) 598-7373
25 Trial Attorney: John J. Hickey, OSB # 063593

Page 1 - NOTICE OF INTENT TO TAKE DEFAULT          JORDAN SCHRADER RAMIS PC
AGAINST DEFENDANTS BBGL INVESTMENTS LLC                    Attorneys at Law
AND CHRISTOPHER LITTLETON                           Two Centerpointe Dr 6th Flr
                                                       Lake Oswego OR 97035
                                         Telephone: (503) 598-7070 Fax: (503) 598-7373
                                                 47005-38214 173477.doc\CEJ/N21/2009

                                                              Exhibit _1_
                                                              Page _53_

1                                       **CERTIFICATE OF SERVICE**

2             I hereby certify that on the date shown below, I served a true and correct copy of the

3 foregoing NOTICE OF INTENT TO TAKE DEFAULT AGAINST DEFENDANTS BBGL

4 INVESTMENTS LLC AND CHRISTOPHER LITTLETON on:

5                           Louis Santiago
                          Holland & Knight LLP

6                           111 SW Fifth Avenue Ste 2300
                          Portland OR 97204

7                           Facsimile: (503) 241-8014
                          Attorney for Defendants BBGL Investments LLC and Christopher

8                           Littleton

9 ☐     by first class mail, postage prepaid.

10 ☐     by hand delivery.

11 ☐     by facsimile transmission.

12 ☒     by facsimile transmission and first class mail, postage prepaid.

13 ☐     by electronic transmission and first class mail, postage prepaid.

14             DATED: August 21, 2009.

15

16                                       John J. Hickey, OSB # 063593
                                    Attorney for Plaintiff R. E. Noah and Co.

17

18

19

20

21

22

23

24

25

CERTIFICATE OF SERVICE

JORDAN SCHRADER RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone: (503) 598-7070 Fax: (503) 598-7373
47005-3R214 173477.doc\CEJ/8/21/2009

Exhibit _1_
Page _54_